STATE OF CONNECTICUT *v.* DERRICK MURRELL
(2729)

DUPONT, C. J., BORDEN and BIELUCH, Js.

Argued January 8—decision released April 15, 1986

*Martin Zeldis,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Randy L. Cohen,* special assistant state's attorney, with whom, on the brief, were *James G. Clark,* deputy assistant state's attorney, and *Dennis O'Connor,* assistant state's attorney, for the appellee (state).

BORDEN, J. The defendant appeals from the judgment of conviction, after a jury trial, of burglary in the third degree, in violation of General Statutes § 53a-103 (a), larceny in the fifth degree, in violation of General Statutes § 53a-125a (a), and criminal mischief in the third degree, in violation of General Statutes § 53a-117 (a) (1) (A). The sole issue in this appeal involves the admission into evidence during the state's case-in-chief of the defendant's prior miscon-

duct as substantive proof of identity and a common scheme to commit the charged offenses. We find no reversible error.

The jury reasonably could have found the following facts: On May 18, 1983, Richard Perretta, a Hartford police officer, was employed on private duty as a guard in a downtown parking garage in Hartford. While patrolling an underground level of the garage during the noon hour in his vehicle, Perretta observed a man who was holding car stereo speakers in the vicinity of a 1979 Saab automobile which appeared to have been burglarized. The individual, who was within approximately thirty feet of Perretta, saw him and began to flee. Perretta got out of his car and chased the individual up a stairway whereupon the individual threw the speakers at him and dropped a car stereo radio. Perretta was able to see the individual's face several times during the chase from a distance of approximately ten feet. After a street chase, Perretta lost sight of the individual a block away. Perretta stopped a passing police cruiser and radioed a description of the suspect. The individual was described as a black male, about five feet six inches tall, wearing a striped rugby-type shirt, blue jeans and a dark blue or black waist-length jacket. Perretta and the other police officer returned to the parking garage to contact the owner of the burglarized car and to make a report of the incident. The front driver's side window of the car had been smashed and a radio, later identified to be a Blaupunkt AM/FM stereo radio and cassette tape deck, had been ripped out of the dashboard.

Officer Peter Matarangas, who was on patrol in the downtown area, received the radio bulletin at approximately 1 p.m. Shortly thereafter, he observed an individual, who fit the description of the suspect, exiting a nearby parking garage. The individual was wearing the same type and color of clothing as described by

Perretta, and was carrying a black jacket. Matarangas and two other police officers apprehended the defendant and, upon patting down the jacket, they found two black radio knobs inside a pocket. The defendant was transported to the first parking garage where Perretta identified him as the perpetrator. Perretta placed the knobs on the Blaupunkt radio and found that they fit. The defendant was then placed under arrest.

Prior to trial, the defendant filed a motion in limine requesting the exclusion from evidence of any and all prior felony or misdemeanor convictions which the state might seek to offer for impeachment purposes. The defendant had been previously convicted of larceny in the third degree, of being a persistent larceny offender, and of escape from custody. During a preliminary hearing, the state disclosed its intention to introduce evidence of the defendant's prior involvement in a similar unrelated burglary of a car parked in a downtown parking garage. This evidence was also the factual basis for the defendant's prior larceny conviction. The trial court granted the motion in limine in part, thereby excluding from evidence the conviction of escape from custody, and deferred ruling on the motion regarding the larceny convictions and the evidence of the prior misconduct until the state's proffer.

At trial, the state sought to offer the testimony of Hartford police detective Richard Klaus as evidence of the defendant's prior misconduct. Out of the presence of the jury, Klaus testified that on March 27, 1982, while assigned to patrol the downtown Hartford area and parking facilities, he observed an individual, later identified as the defendant, exiting a parking garage. Klaus stopped the defendant and noticed that he was partially concealing a car radio. The defendant thereupon dropped the radio and fled. Upon being apprehended, the defendant agreed to show Klaus where he obtained the radio and they proceeded to a lower level

of the parking garage where the defendant pointed out a late model Chevrolet. The window of the driver's side front door was broken and the dashboard was damaged by the forcible removal of the radio. Klaus identified the radio as a Blaupunkt make. This incident occurred in the early evening in a parking garage located approximately one hundred yards from the parking garage involved in the present case.

The state limited the offer of this evidence to proof of identity and a common scheme, and stipulated that there would be no offer of the felony convictions for impeachment purposes if the defendant chose to testify. The trial court ruled that the prior misconduct evidence was admissible for the purposes offered and accordingly denied the defendant's motion in limine as to that evidence.[1] In the presence of the jury, Klaus testified as set forth above. Upon the conclusion of his testimony, the trial court cautioned the jury that the evidence was admitted for the limited purpose of proving identity and a common scheme to commit such a crime. On appeal, the defendant claims that the trial court erred in admitting this evidence. We agree.

"Evidence of similar but unconnected crimes is excluded because it violates the rule of policy which forbids the state initially to attack the character of the accused and also the rule of policy that bad character may not be proved by particular acts." *State* v. *Esposito,* 192 Conn. 166, 169, 471 A.2d 949 (1984). "It is not because other crimes evidence offered to prove criminal proclivity lacks any probative value that it is ordinarily rejected, however, but because it is com-

---

[1] Although the written motion in limine was technically limited to exclude evidence of the defendant's prior convictions, the record clearly reveals the theory upon which the proof of prior misconduct was offered by the state and admitted by the court; cf. *Travelers Ins. Co.* v. *Hendrickson,* 1 Conn. App. 409, 411 n.3, 472 A.2d 356 (1984); and both parties have briefed this issue as the sole issue on appeal.

monly regarded as having too much. McCormick, Evidence (2d Ed. 1972) § 190; 1 Wigmore, Evidence (3d Ed. 1940) § 194." *State* v. *Esposito,* supra, 181 (*Shea, J.,* dissenting). Notwithstanding these general principles, " '[s]uch evidence [may be] admissible . . . when it is particularly probative in showing such things as intent, an element in the crime, identity, malice, motive or a system of criminal activity . . . .' " *State* v. *Gilnite,* 4 Conn. App. 676, 680, 496 A.2d 525 (1984).

Where the state's offer of evidence of a defendant's prior misconduct is directed to the proof of one or more of those commonly recognized items, the question of admissibility lies in the trial court's discretion. *State* v. *Gilnite,* supra. The principles underlying the general rule of exclusion, however, continue to apply. See *State* v. *Onofrio,* 179 Conn. 23, 28–30, 425 A.2d 560 (1979); *State* v. *Gilligan,* 92 Conn. 526, 530–33, 103 A. 649 (1918). "When assessing the admissibility of 'other crimes' evidence, the application of a mechanical test determining that the proffered evidence fits within some class of exception to the rule of nonadmissibility, may obscure sight of the underlying policy of protecting the accused against unfair prejudice. That policy ought not to evaporate through the interstices of the classification. The problem is thus one of balancing the actual relevancy of the 'other crimes' evidence in light of the issues and the other evidence available to the prosecution against the degree to which the jury will probably be roused by the evidence." *State* v. *Onofrio,* supra, 29. With these general principles in mind, we turn to the specific grounds upon which the evidence of the defendant's prior misconduct was admitted.

I

IDENTITY

"It is the state's burden to prove every element of the crime, including [identity.]" *State* v. *Perry,* 195

Conn. 505, 521, 488 A.2d 1256 (1985). "The first threshold for the use of evidence of other crimes or misconduct on the issue of identity is that the methods used be 'sufficiently unique to warrant a reasonable inference that the person who performed one misdeed also did the other.' [*State* v. *Ibraimov,* 187 Conn. 348, 354, 446 A.2d 382 (1982)]. If this initial criterion is satisfied, the trial court must then balance the probative value of the evidence against its prejudicial effect and, before admitting it, must find that the former outweighs the latter. *State* v. *Braman,* 191 Conn. 670, 676, 469 A.2d 760 (1983)." *State* v. *Crosby,* 196 Conn. 185, 190, 491 A.2d 1092 (1985).

The state argues that the similarities between the incidents outweigh the dissimilarities and that there are no particularly distinctive dissimilarities. This argument fails for two reasons.

First, it misstates the applicable legal standard. As previously indicated, the law requires not only a high degree of similarity between the events and circumstances of the past and present incidents, it imposes the additional requirement that those common features be "sufficiently unique"; *State* v. *Ibraimov,* supra; to warrant the desired inference. The standard is not, as the state suggests, that the similarities outweigh the dissimilarities and that those dissimilarities be unique or distinctive.

Second, although the state has pointed out several similarities between the defendant's prior misconduct and the present charges, the state has not demonstrated that those commonalities share any sufficiently unique features to warrant the desired inference. Id. Although both incidents involved cars parked in enclosed parking garages in the downtown Hartford area, there is nothing particularly unique about that

fact. In addition, the proximity of these garages in a congested downtown area adds little by which to identify this defendant.

There is also nothing particularly distinctive about breaking a window to gain access to the interior of a parked car. Although this means of entry is admittedly "unsophisticated"; see *State* v. *Crosby,* supra, 191; unlike the burglary of a jewelry store, the degree of sophistication employed in the burglary of a car to acquire a radio is a factor of minimal significance. Similarly, the fact that the radio in each instance was forcibly removed from the car dashboard cannot be considered to be of such significance as to create the inference that this defendant committed both burglaries. It is reasonable to assume that many car burglars would be concerned with a quick and forceful removal of the desired objects rather than take the time to extract the items carefully. Nor is there any marked significance in a suspect dropping such objects and fleeing upon being spotted.

Although there is some distinctiveness in the fact that both incidents involved the theft of the same brand of car stereo, this fact alone does not rise to the level of uniqueness required by law. Where the state seeks to introduce in its case-in-chief evidence of a defendant's prior misconduct as substantive proof of identity, " 'much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be so unusual and distinctive as to be like a signature.' McCormick, supra, p. 449." *State* v. *Shindell,* 195 Conn. 128, 135, 486 A.2d 637 (1985). We are not persuaded that these facts and circumstances meet this threshold criterion for admissibility. Therefore, we find that the trial court erred in admitting this evidence on the issue of identity.

## II

### COMMON SCHEME

We next consider whether the trial court properly admitted the evidence to prove a common scheme to commit these offenses.

Where, as here, evidence of prior misconduct does not possess sufficient relevance on the issue of identity, but is offered into evidence to prove a common scheme, the trial court is presented with a thorny problem. On the one hand, "the courts have not always perceived that there are in truth these two distinct tests for such evidence." 2 Wigmore, Evidence (Chadbourn Rev. 1979) § 304, p. 251; see State v. *Ibraimov,* supra (error to admit prior misconduct to prove identity; dissent would admit to prove common scheme). On the other hand, any distinction between the tests is clouded by the fact that such evidence, when admitted as proof of a common scheme, also tends to prove identity. See McCormick, supra, pp. 448–49; 2 Weinstein & Berger, Weinstein's Evidence § 404 [16]; Slough & Knightly, "Other Vices, Other Crimes," 41 Iowa L. Rev. 325, 330 (1956).

These difficulties are further compounded by the fact that there is some discrepancy in the cases as to the factors governing the admissibility determination when evidence of prior misconduct is offered to prove a common scheme. Compare State v. *Shindell,* supra, 134 (similarity factor not pertinent when the theory of admissibility is common scheme as opposed to identity), and State v. *Esposito,* supra, 172 (shared marks of similarity is a significant factor when theory of admissibility is common scheme). Furthermore, even where specific factors have been identified and applied, the danger remains that evidence of prior misconduct, offered to prove a common scheme, will, in fact, serve

"merely to show an evil disposition on the part of the accused." *State* v. *Williams,* 190 Conn. 104, 108, 459 A.2d 510 (1983); see also *State* v. *Esposito,* supra, 181 (*Shea, J.,* dissenting).

We recognize, therefore, that the case law on the common scheme or system of criminal activity exception has not always provided precise boundaries to that exception. A careful examination of that case law, however, does disclose that the common scheme or system of criminal activity exception is woven of several separate but related strands, and that the identification of those strands aids in the disposition of the issue presented in this appeal.

One strand exists where the nature of the criminal conduct with which the defendant is charged itself involves an ongoing criminal scheme or course of conduct, and the uncharged misconduct evidence can be seen as part of that ongoing criminal scheme or course of conduct. Thus, in *State* v. *Carrione,* 188 Conn. 681, 690–93, 453 A.2d 1137 (1981), cert. denied, 460 U.S. 1084, 103 S. Ct. 1775, 76 L. Ed. 2d 347 (1983), the defendant was charged with larceny by virtue of a scheme to defraud, and the court suggested that testimony about several later, uncharged episodes "might well have been admitted by the trial court to show a common scheme to defraud the victims by inducing them to reinvest the returns she paid them along with additional sums of money." Id., 692. See also *State* v. *Nardini,* 187 Conn. 513, 518–19, 447 A.2d 396 (1982), in which the defendant was charged with conspiracy to commit arson on a building which he owned, and the court found no error in admitting evidence that he had solicited others at different times to set fire to that building and other buildings which he owned. See generally *State* v. *Johnson,* 190 Conn. 541, 549, 461 A.2d 981 (1983) (state has burden to prove that defendant acted pursuant to a scheme to defraud).

Another strand exists where, although the charged misconduct does not itself involve an ongoing system of criminal activity, nevertheless the prior uncharged misconduct evidence, taken together with other connecting evidence, permits the inference that the prior misconduct evidence itself forms part of an overall predetermined plan, scheme or design of which the charged offense is a part. Thus, in *State* v. *Shindell,* supra, 135–36, the defendant was charged, in part, with two counts of arson of a particular building, and the court found no error in admitting evidence that the defendant and his agents had within the previous year attempted to burn and collect insurance on other buildings in which the defendant had a financial interest similar to the financial interest held by him in the building that he was accused of burning. The Supreme Court held that "the trial court could reasonably conclude that the other crimes evidence was relevant and material to show 'a larger continuing plan, scheme, or conspiracy, of which the present crime[s] on trial [were] a part.' McCormick, supra, p. 448." Id., 136. A footnote in *State* v. *Shindell,* supra, further "illustrates the larger plan or scheme exception to the general prohibition against evidence of other crimes or misconduct: 'In the prosecution of D for arson of building A, evidence that D had wrongfully burned building B would be relevant, if coupled with other evidence to show that D had a *plan* (scheme or design) to destroy these buildings in order to collect insurance proceeds.' (Emphasis in original.)" Id., 134 n.5, quoting Lilly, An Introduction to the Law of Evidence § 45, p. 133.

A third strand exists where the crime charged is sexual in nature, and the uncharged misconduct is also sexual and is close in time, similar to the crime charged and involves a person similar to the prosecuting witness. Thus, in *State* v. *Hauck,* 172 Conn. 140, 374 A.2d 150 (1976), the defendant, a teacher, was charged with

sexually touching and with photographing a student, inducing her participation with the promise of a passing grade. The court found no error in the admission of testimony that during the same school year the defendant had sexually touched another student, inducing her consent by the promise of a passing grade. The court cited with approval several "decisions in other jurisdictions indicat[ing] a greater liberality in admitting evidence of other criminal acts to show a common scheme, pattern or design in sex-related crimes." Id., 145. This strand was further articulated in *State* v. *Esposito,* supra, 169–70, where the court held that "evidence of prior sex offenses committed with persons other than the prosecuting witness is admissible to show a common design or plan where the prior offenses: (1) are not too remote in time; (2) are similar to the offense charged; and (3) are committed upon persons similar to the prosecuting witness." Under this view, the requirement that the prior misconduct be "similar to the offense charged" means that "the prior offense was sufficiently similar to the offense charged to show a pattern or common design . . . . " Id., 170.

A fourth strand exists where the uncharged misconduct evidence is admitted to disprove a defense raised by the defendant, and the nature of the defense is such that the uncharged misconduct evidence is relevant to the issue raised by that defense. Thus, in *State* v. *Carter,* 198 Conn. 386, 393, 503 A.2d 576 (1986), the defendant raised the defense of insanity to the charge of murder. The court found no error in the admission of evidence of a prior murder conviction, ruling that "[w]here insanity has been raised as a defense to a crime, other misconduct bearing upon that issue is similarly admitted as an exception to the general prohibition against such evidence. Once the insanity defense is asserted by a defendant the state is entitled to use relevant evidence of prior crimes to rebut it." Id.

A fifth strand exists where, because of the nature of the charged offense, the inherent difficulties of obtaining direct evidence bearing on one or more elements of that offense mandate a more relaxed standard in the admission of uncharged misconduct evidence. Thus, in *State* v. *Tucker,* 181 Conn. 406, 435 A.2d 986 (1980), the defendant was charged with the murder of and risk of injury to an infant. The court found no error in the admission of evidence of prior acts of physical abuse by the defendant on the victim as relevant to establish "a pattern of behavior and an attitude toward the child that is indicative of the defendant's state of mind." Id., 415.

Yet a sixth strand exists where the defendant elicited testimony which opened the door to the admission of evidence of uncharged misconduct which might otherwise not be admissible. Thus, in *State* v. *Bowman,* 3 Conn. App. 148, 485 A.2d 1343 (1985), the defendant was charged with sexual assault. He elicited testimony that he was a family friend of the victim and was thus unlikely to assault her. This testimony opened the door to rebuttal evidence that he had sexually assaulted the victim's younger sister two years earlier.

We do not suggest that these strands are all of the twisted threads that tie into the gordian knot of the common scheme exception. The availability of such a categorization, however, aids in both identifying the various factors governing the determination of admissibility and in the application of our precedents by analogy to the facts and circumstances of this case. Thus, the combined approach of analyzing the component factors and analogizing them to the precedential categories should serve to minimize the evidentiary risks which inhere in an otherwise mechanical test of admissibility. See *State* v. *Onofrio,* supra.

Generally, the determination of whether the uncharged misconduct evidence is relevant as proof of

a common scheme or system of criminal activity
depends on a number of factors. Those factors include:
(1) the degree of *general* similarity between the
uncharged and charged misconduct; (2) the frequency
of the uncharged misconduct; and (3) the remoteness
or closeness in time between the uncharged and
charged misconduct. The various precedents indicate
that these factors derive from the common sense psy-
chological insight that when one engages in an overall
system of criminal activity, he tends to do so by engag-
ing in generally similar conduct, with some frequency,
over a relatively confined period of time. See *State* v.
*Esposito,* supra, 171.

Where evidence of prior misconduct is sufficiently
similar to the facts and circumstances of the charged
offense to be admissible for the purpose of proving that
the same individual committed both crimes, i.e., to be
admissible under the identity exception, then there is
some likelihood that the evidence is also relevant and
admissible for the purpose of proving a common scheme
or system of criminal activity. See *State* v. *Braman,*
191 Conn. 670, 678–81, 469 A.2d 760 (1983). Where,
however, that evidence is not sufficiently similar to the
charged offense to be admissible for the purpose of
proving identity, but is offered into evidence in the
state's case-in-chief for the purpose of proving a com-
mon scheme, then the similarity factor alone logically
cannot be determinative, particularly where, as in this
case, identity is the principal element in dispute. This
conclusion follows from the observation that evidence
of a common scheme also tends to prove identity. See
McCormick, supra, pp. 448–49; 2 Weinstein & Berger,
supra, § 404 [16]; Slough & Knightly, supra, 330. To
conclude otherwise would necessitate our adoption of
the inherently contradictory position that the same evi-
dence, which is not sufficiently similar to the charged
misconduct to be admissible for the purpose of prov-

ing identity, may nevertheless be sufficiently similar for the purpose of proving a common scheme or system of criminal activity, and, therefore, admissible under that theory to prove the principal factual element of the charged crimes in dispute, namely, identity.

Thus, in this case, although there are a number of similarities between the past and present incidents of misconduct, because of the particular facts of this case the determination of whether the prior misconduct evidence is relevant to prove a common scheme to commit these offenses requires a finding of more than "a high degree of similarity in the modus operandi of their commission." *State* v. *Shindell,* supra, 135. There must be "a substantial number of other factors"; id.; which serve to connect the prior incident of misconduct to the charged crimes. Only then can this evidence legitimately be found to have sufficient relevance, apart from its potential relevance to identity, to be admissible for the independent purpose of proving a common scheme or system of criminal activity.

An examination of the record reveals that there is an insufficient number of factors which would serve to connect the prior incident of misconduct to the charged crimes. The evidence in question was separated by a period of fourteen months from the date of the offense. Nevertheless, this factor is not decisive because, as the state has properly noted, the defendant was incarcerated for most of this time. See *State* v. *Howard,* 187 Conn. 681, 686 n.3, 447 A.2d 1167 (1982). Thus, the evidence cannot be considered remote. Id.

In terms of additional factors, derived from the precedents, which might bolster the admissibility of this evidence, the following distinctions are pertinent. The evidence was offered during the state's case-in-chief. Cf. *State* v. *Bowman,* supra. There was no indication

that the nature of the charged misconduct or any inherent difficulties in obtaining proof should be deemed to have an effect upon the admissibility of this evidence. Cf. *State* v. *Tucker,* supra. The offenses charged in the present case are not sex-related crimes; cf. *State* v. *Esposito,* supra; *State* v. *Hauck,* supra; and there is no indication that the nature of the charged conduct itself involves an ongoing criminal scheme or course of conduct. Cf. *State* v. *Johnson,* supra; *State* v. *Carrione,* supra; *State* v. *Nardini,* supra. Nor was any additional evidence admitted with which the evidence of uncharged misconduct might be combined in order to create the inference that these incidents were, in fact, parts of an overall plan, scheme or design. Cf. *State* v. *Shindell,* supra. The nature of the defense; *State* v. *Carter,* supra; is also not a pertinent factor in this factual context. See *State* v. *Howard,* supra, 688–89 (*Shea, J.,* concurring).

We conclude, therefore, that the evidence of the defendant's prior misconduct did not have sufficient independent relevance as proof of a common scheme or system of criminal activity to be admissible under these facts and circumstances. To conclude otherwise would be equivalent to allowing the common scheme exception to serve as a pretext for the admission of otherwise inadmissible identity evidence.

### III

#### HARMLESS ERROR

The state argues that any error in the admission of the defendant's prior misconduct was harmless. We agree.

Whether this error is harmful or harmless depends upon "whether the admission of [Klaus'] testimony prejudicially affected the jury's verdict." *State* v. *Conroy,* 194 Conn. 623, 626–27, 484 A.2d 448 (1984).

"Because the defendant did not claim at trial that the error deprived him of a constitutional right, he bears the burden of proving its harmfulness." Id., 627. "If the record discloses that the [ruling] could not reasonably have affected the verdict, [it was] not harmful and hence not reversible error." *State* v. *Tropiano,* 158 Conn. 412, 427, 262 A.2d 147 (1969), cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288 (1970); *State* v. *Brown,* 199 Conn. 14, 25, 505 A.2d 690 (1986). In this case, the defendant has not met his burden of establishing harmfulness.

The testimony of Klaus was merely one aspect of an otherwise substantial case upon which the jury could conclude that the defendant was the perpetrator of these offenses. That case included the testimony of Perretta who was able to see the defendant's face several times at close range before and during the chase and who positively identified him at the trial. Because of his training as a police officer and his employment in this situation as a guard, Perretta "was not a casual or passing observer, as is so often the case with eyewitness identification." *Manson* v. *Brathwaite,* 432 U.S. 98, 115, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977). In this regard, "he could be expected to pay scrupulous attention to detail . . . . " Id. The record indicates that he did, in fact, pay close attention to detail in his description of the perpetrator's features and clothing as indicated by the bulletin that he issued over the radio. Furthermore, the evidence that the knobs from the stolen radio were found in the defendant's jacket pocket is particularly incriminating. In short, because of the strength of the other evidence against the defendant, he has not persuaded us that it is likely that the erroneously admitted evidence affected the verdict.

There is no error.

In this opinion the other judges concurred.