STATE OF CONNECTICUT *v.* EMIL J. CARSETTI, JR.
(5012)

DUPONT, C. J., HULL and SPALLONE, Js.

Argued June 3—decision released September 15, 1987

*Conrad Ost Seifert,* for the appellant (defendant).

*Lawrence J. Tytla,* assistant state's attorney, for the appellee (state).

SPALLONE, J. The defendant is appealing from the judgment of conviction, after a jury trial, of burglary

in the third degree in violation of General Statutes § 53a-103, larceny in the fourth degree in violation of General Statutes § 53a-125, and being a persistent serious felony offender in violation of General Statutes § 53a-40 (b). The defendant contends that the trial court erred (1) in denying his motion for compliance, (2) in allowing into evidence testimony concerning a subsequent burglary committed by the defendant, and (3) in declining to charge the jury on the lesser included offense of criminal trespass in the second degree. We find no error.

The jury could reasonably have found the following facts. On June 25, 1985, at about 11:40 a.m., Trooper Paul Mallon of the state police responded to a burglar alarm that emanated from the Bearn residence located in a rural area in the town of North Stonington. Mallon inadvertently drove beyond the Bearn residence, turned around and, while driving back, observed the defendant some fifty to seventy-five feet south of the house and heading down Wyassup Road. The defendant told Mallon that his van had overheated and that he was looking for water. The defendant declined the trooper's offer of assistance.

Mallon then proceeded to the Bearn residence where he found that an exterior storm door had been pulled open and that the interior door had been smashed and forced open. Mallon checked the interior of the premises in order to determine whether anyone was present. Finding no one, he exited through the front door, crossed the front yard and approached a fence that ran along the road, where he found two oriental rugs on the lawn close to the road.

Mallon then drove south down Wyassup Road, the direction the defendant was last headed, but he did not see the defendant or anyone else. Mallon called for assistance and then came upon the defendant's van

parked at Arbor Acres, a large poultry farm north of the Bearn residence. The key was in the ignition and the trooper had no trouble starting the van. A short time later, Detective Ernest Lawson arrived on the scene to assist Mallon in searching for the burglar. Lawson thereafter came upon the defendant while travelling down a dead end road in the vicinity where the van was parked. The defendant was perspiring heavily, had removed his shirt and had fresh grass or leaf stains on the bottoms of his trousers and on his shoes. Lawson placed the defendant under arrest and returned with him to the Bearn residence where the defendant told the police that he was still having trouble with his van.

Detective Michael Malchik of the state police major crime unit went to the Bearn residence on the afternoon of the crime and confirmed that entry into the residence had been made by prying open the door. He found that several pieces of the door were on the ground and that a pane of glass had been broken on the interior door. He also took from the floor, as evidence, a piece of carpet padding that contained shoe prints later found to match the shoes worn by the defendant at the time of his arrest.

In addition to the testimony of the various police officers and an expert who testified as to the shoeprints, the state presented the testimony of a witness concerning a separate burglary which occurred at her home in Massachusetts after the defendant had been freed on bail from the charges in the present action. The court allowed the witness to testify after holding a hearing outside the presence of the jury in which it ruled that her testimony was admissible. The witness testified that on September 4, 1985, at about 11:30 a.m., she returned to her home in Millis, Massachusetts. Her home was an old large white colonial and was well secluded from the neighbors by woods and shrubs. As

she entered the driveway, she saw a large car, with a Rhode Island registration, backed up to the house. She also saw that the solid wooden door had been cracked completely across and that the lock had been pried open. She then observed the defendant emerging from the house carrying five oriental rugs. The defendant then put the rugs down, went to the car, and closed the trunk, obscuring the license plate. The witness then entered her house where she found that tables had been toppled over, and that a larger rug had been rolled up. She also found a crowbar on the hall floor. She testified that nothing else had been taken from the house.

In his first claim of error, the defendant asserts that the trial court erred in refusing to order the state, pursuant to the defendant's motion for compliance, to turn over to him certain items of physical evidence in order that they might be examined by his expert witness.

The facts pertinent to this claim are as follows. On August 7, 1985, the defendant, pursuant to Practice Book § 741, filed a motion for production and discovery requesting, in pertinent part, that the state disclose and allow him to inspect, copy, photograph and have reasonable tests made (1) on exculpatory information or materials, and (2) on tangible objects within the possession, custody and control of any state agency which are material to the preparation of the defense or are intended for use by the prosecuting authority as evidence at trial. On January 4, 1986, the defendant filed a motion for compliance, claiming that the state had failed to comply with the earlier discovery order in that it had not allowed the defendant to perform tests on certain clothing and footwear. The defendant attached to the motion a copy of a letter purported to be from his expert witness in which the expert claimed that he was not allowed to take the evidence into his custody in order to perform tests in his own laboratory. After hearing oral argument and receiving briefs from both

parties, the trial court, *Norko, J.,* denied the defendant's motion with the exception that he be allowed to view the evidence.[1]

The defendant, however, has failed to furnish us with a sufficient record to support his claim. The sole evidentiary basis for the defendant's claim of error is representations made in the trial court by the defendant's counsel and a copy of a letter by an alleged expert complaining he was denied the right to take custody of the evidence and to test it somewhere other than the police barracks. Representations by counsel are not "evidence" upon which an appellate court can rely when reviewing the findings of the trial court. *Cologne v. Westfarms Associates,* 197 Conn. 141, 154, 496 A.2d 476 (1985). Nor can a letter that was not made under oath and never admitted as an exhibit constitute evidence upon which we may evaluate the ruling of the trial court. See *Grunschlag* v. *Ethel Walker School, Inc.,* 189 Conn. 316, 320, 455 A.2d 1332 (1983). Although counsel for the defendant and the state may be content to rely on their own representations when pressing or posing motions in the trial court, they run the risk that, on appeal of an unfavorable ruling, they will have failed to establish a sufficient factual basis, supported by testimony or exhibits, to furnish us an adequate record to support their claims of error. Here, the defendant has not provided us a sufficient factual basis in the pleadings, transcripts or exhibits to support his

---

[1] The record does not reveal the precise scope of Judge Norko's ruling. The court did not file a memorandum of decision and the motion for compliance filed with the court was marked neither "granted" nor "denied." The only indication in the record as to how Judge Norko ruled was a representation by the clerk of the court that he had talked to Judge Norko who had told him that "he did deny the motion with the exception that [the defendant] could be allowed to view the evidence and that it is on record at the G.A." We note that the defendant never sought to have the trial court clarify or provide the factual basis for this ruling by filing a motion for articulation pursuant to Practice Book § 4051.

claim. Accordingly, there is no basis for us to conclude that the trial court erred in its findings of fact or conclusions of law.

In his second claim of error, the defendant contends that the trial court abused its discretion in permitting the state to introduce evidence concerning a subsequent burglary allegedly committed by the defendant while he was free on bail from the charges in the present action.

While evidence of a defendant's other unconnected crimes is inadmissible to demonstrate the defendant's bad character or to suggest that he has a propensity for criminal behavior; *State* v. *Morowitz,* 200 Conn. 440, 442, 512 A.2d 175 (1986); *State* v. *Brown,* 199 Conn. 47, 56, 505 A.2d 1225 (1986); *State* v. *Braman,* 191 Conn. 670, 675, 469 A.2d 760 (1983); such evidence may be admissible for other purposes, such as "to prove knowledge, intent, motive, and common scheme or design, if the trial court determines, in the exercise of judicial discretion, that the probative value of the evidence outweighs its prejudicial tendency." *State* v. *Lizzi,* 199 Conn. 462, 468, 508 A.2d 16 (1986); *State* v. *Brown,* supra; *State* v. *Shindell,* 195 Conn. 128, 133–34, 486 A.2d 637 (1985). " 'Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done.' " *State* v. *O'Neill,* 200 Conn. 268, 274, 511 A.2d 321 (1986); *State* v. *Johnson,* 190 Conn. 541, 548–49, 461 A.2d 981 (1983). Therefore, on review by an appellate court, "every reasonable presumption should be given in favor of the trial court's ruling." *State* v. *Ryan,* 182 Conn. 335, 337, 438 A.2d 107 (1980); *State* v. *Barlow,* 177 Conn. 391, 394, 418 A.2d 46 (1979).

Here, the state offered the testimony of a witness concerning a burglary committed by the defendant on

September 4, 1985, claiming that the testimony was relevant to establish a common modus operandi and to identify the defendant as the perpetrator of the present offense. Where evidence of other misconduct is offered to show a common modus operandi, the marks which the other and the present offenses have in common must be such that it may logically be inferred that if the defendant is guilty of one he must be guilty of the other. *State* v. *Morowitz,* supra, 443; *State* v. *Esposito,* 192 Conn. 166, 172, 471 A.2d 949 (1984). It is not enough that the two offenses are similar. To establish a common design, the characteristics of the two offenses must be sufficiently distinctive and unique "as to be like a signature." C. McCormick, Evidence, § 190 (3d Ed.); *State* v. *Morowitz,* supra; *State* v. *Mandrell,* 199 Conn. 146, 152, 506 A.2d 100 (1986).

An analysis of the two crimes discloses the following similarities: (1) both offenses occurred at almost exactly the same time of day; (2) in each instance, the defendant, a Rhode Island resident, had gone to an out of state location to commit the crime; (3) both homes were large white colonials; (4) each house was situated in a secluded location and was not visible from any neighboring homes; (5) both homes had been relatively unoccupied in the period prior to the burglaries; (6) in both cases forcible entry had been made by prying the lock and cracking the door frame; (7) the evidence in each case reasonably supported a finding that the same type of tool was used to gain entry into each of the homes; (8) at each location the defendant was operating a large vehicle which was registered in Rhode Island; (9) the two crimes occurred just over three months apart; (10) the latter crime was of the same nature as the crime charged in this case while the defendant was out on bail; (11) the *only* items of value taken in each burglary were oriental rugs which were about the same size; (12) and the defendant was iden-

tified as the person who was actually at or in the vicinity of both crimes. Although some of the similarities set forth above refer to legal or relatively common occurrences when standing alone, such a fact does not negate the uniqueness of the offenses when viewed as a whole. It is the distinctive combination of circumstances and actions which forms the "signature" or modus operandi of the crime; *State* v. *Esposito,* supra, 172; *State* v. *Braman,* supra, 677; and it is this "criminal logo" which justifies the inference that the person who committed one offense committed the other. *State* v. *Morowitz,* supra, 445. Under these facts and circumstances we conclude that the trial court did not abuse its discretion in concluding that the characteristics of the two offenses were sufficiently distinctive and unique to be "like a signature," and in further concluding that the defendant's participation in the Massachusetts burglary was highly probative so as to warrant evidence of that crime to be submitted to the jury.

Moreover, implicit in the trial court's admission of the evidence of a "signature" crime is the conclusion that the probative value of the evidence outweighed any prejudicial effect the evidence might have. The points at which the two crimes interfaced were multiple and rendered the evidence highly probative. *State* v. *Morowitz,* supra, 447. The court was aware of the potential prejudicial effect of the evidence and carefully instructed the jury as to the limited purpose for which it was admitted. See id.; *Russell* v. *Dean Witter Reynolds, Inc.,* 200 Conn. 172, 193, 510 A.2d 972 (1986); *State* v. *Braman,* supra, 676. In doing so, the court expressly related to the jury that the testimony was not being offered "for the purpose of . . . establishing bad character [of the defendant] or his propensity for crime." The state's attorney followed the same course and referred only twice to the "signature" evidence and on both

occasions for the limited purpose for which it was being offered. *State* v. *O'Neill,* supra, 275.

The defendant's reliance on *State* v. *Murrell,* 7 Conn. App. 75, 507 A.2d 1033 (1986), is misplaced. In that case, the defendant was charged with a crime, in essence a street crime, involving the smashing of an automobile window and the taking of a car stereo. In holding that the trial court erred in admitting evidence of other car stereo thefts, we specifically noted the "unsophisticated" nature of the crime and the insignificant similarities proffered by the state. Id., 82. The similarities in the present case are far more significant and compelling than those in *Murrell* and compare favorably with other cases in which the exercise of the trial court's discretion in admitting evidence of "signature" crimes has been upheld. See *State* v. *Morowitz,* supra; *State* v. *Mandrell,* supra; *State* v. *Crosby,* 196 Conn. 185, 191, 491 A.2d 1092 (1985); *State* v. *Braman,* supra; *State* v. *Howard,* 187 Conn. 681, 685, 447 A.2d 1167 (1982). Accordingly, we can find no abuse of the trial court's discretion in its carefully informed and well considered decision to admit the testimony.

In his final claim of error, the defendant contends that the trial court erred in its refusal to charge the jury on criminal trespass in the second degree; General Statutes § 53a-108; as a lesser included offense of burglary in the third degree. General Statutes § 53a-103. While the defendant both requested the court to charge the jury on criminal trespass in the second degree and took exception to the court's failure to give this charge, in neither case did the defendant provide any factual or legal basis, other than a quotation of *State* v. *Whistnant,* 179 Conn. 576, 427 A.2d 414 (1980), to support his claim.[2] " '[A]n "appropriate instruction" under *State*

---

[2] The defendant framed his request to charge as follows: "Lesser Included Offense Criminal Trespass — A person is guilty of criminal trespass in the

v. *Whistnant* must contain " 'a complete statement of the essential facts as would have justified the court in charging in the form requested.' " ' " *State* v. *Ostroski,* 201 Conn. 534, 558, 518 A.2d 915 (1986); *State* v. *McKenna,* 11 Conn. App. 122, 134, 525 A.2d 1374 (1987); see also Practice Book § 852. A citation or quotation of *State* v. *Whistnant,* supra, does not, by itself, provide the substantive principles of criminal law which would justify any particular instruction. *State* v. *McIntosh,* 199 Conn. 155, 160, 506 A.2d 104 (1986). Because the defendant failed to provide factual or legal support for his instruction, we find no error in the trial court's refusal to instruct the jury on the elements of General Statutes § 53a-108.

There is no error.

In this opinion the other judges concurred.

---

second degree when, knowing he is not licensed or privileged to do so, he enters or remains in a building."

The defendant took exception to the court's failure to charge as requested in the following colloquy:

"Mr. Seifert: . . . The second exception would be the omission of the requested charge on the lesser included offense of criminal trespass in the second degree which was on page 12 of the defense Requests to Charge—

"The Court: Yes.

"Mr. Seifert:—Which was simply the statutory definition of criminal trespass in the second degree.

"The Court. Very well.

"Mr. Seifert: On behalf—just for the record, on behalf of this objection to the lack of this charge, I would cite for the record, State of Connecticut versus John Whistnant, 179 Conn. 576, and very briefly I'll state the grounds for this objection. 'A defendant in a criminal matter is entitled to a jury instruction on a lesser included offense only if, one, such an instruction is requested; two, it is not possible to commit the offense charged in the manner described in the information without first committing the lesser offense; three, there is some evidence which justifies conviction of the lesser offense; and four, the proof on the elements which differentiates the lesser offense from the offense charged is sufficiently in dispute to permit a jury to reach a verdict of guilty of the lesser offense.' On that basis, I take exception to that omission.

"The Court: Very well."