STATE OF CONNECTICUT *v.* GEORGE C. CARTER
(11288)

PETERS, C. J., HEALEY, SHEA, DANNEHY and CALLAHAN, Js.

Argued November 13, 1985—decision released January 21, 1986

*Richard N. Palmer,* with whom, on the brief, was *Robert N. Chatigny,* for the appellant (defendant).

*Julia D. Dewey,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, *Michael Dearington,* chief assistant state's attorney, and *David Teitelman,* legal intern, for the appellee (state).

SHEA, J. On March 3, 1975, the defendant, George Carter, was indicted by a grand jury for felony murder in violation of General Statutes § 53a-54c. After several competency hearings, where he was found incompetent to stand trial, the defendant eventually was found competent. At the ensuing trial he was convicted by a jury of felony murder on October 5, 1977. This court, however, subsequently set aside the defendant's conviction in *State* v. *Carter,* 182 Conn. 580, 438 A.2d 778 (1980).[1] In a second trial, the defendant was again convicted of felony murder after a trial to a jury. From this judgment the defendant appeals, claiming that the trial court erred (1) in admitting evidence of the defendant's prior conviction for another murder, and, (2) in charging the jury concerning the definition of insanity.[2] We find no error.

---

[1] The defendant's original conviction was reversed because the trial court failed to instruct the jury to draw "no adverse inferences" from the failure of the defendant to testify as required by General Statutes § 54-84 (b). See *State* v. *Sinclair,* 197 Conn. 574, 582, 500 A.2d 539 (1985); *State* v. *Burke,* 182 Conn. 330, 333–34, 438 A.2d 93 (1980).

[2] During argument of this appeal the defendant withdrew his claim, which had been briefed, that the trial court erred in not instructing the jury that the offense of manslaughter is a lesser included offense of felony murder. On the basis of principles articulated in *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 441 (1980), we recently rejected such a contention in *State* v. *Castro,* 196 Conn. 421, 429, 493 A.2d 223 (1985). See *State* v. *MacFarlane,* 188 Conn. 542, 547–49, 450 A.2d 374 (1982).

On November 4, 1974, at approximately 6:20 p.m., the defendant registered as a guest at a Holiday Inn in New Haven. Later that evening, the defendant was seen in the lobby and the hotel bar adjacent to it. At about the same time the victim, Robert Roth, was seen in the hotel dining room. The victim had been residing at the hotel for several years. Because the dining room was closed by the time the victim had finished eating, he was required to exit through the hotel bar. There was no testimony that anyone had seen the defendant and the victim together. Some time after 10 p.m. that evening, Roth was robbed and murdered. Several items of jewelry and other personal possessions were taken from him, including a University of New Haven class ring bearing his initials. Although the victim did not smoke, a "Kool" cigarette was found in his room.

Later the same evening, the defendant illegally entered an apartment in close proximity to the Holiday Inn, where he attacked and sexually assaulted its female occupant. The defendant then fell asleep, whereupon the woman left the apartment and called the police. The police apprehended the defendant, still asleep, at the apartment. When the defendant was arrested, he had in his possession a package of "Kool" cigarettes, a class ring engraved with the initials "R.I.R." and other items belonging to Roth. The defendant was then transported to police headquarters, where, the following day, he consented to the search of his hotel room. A search of the room uncovered only a single, unsmoked "Kool" cigarette. Blood stains on the clothing worn by the defendant at the time of his arrest were found to be of the same blood type as that of Roth.

The police conducted a routine computer check which revealed that the defendant had been charged with a homicide in Richmond, Virginia, and had fled that state with the charge still pending. Subsequent to the defend-

ant's first conviction for the murder of Roth, he was extradited to Virginia where he was convicted of the murder in Richmond and sentenced accordingly. The defendant returned to Connecticut pursuant to a judicial order in order to be present at his second trial.

The defendant did not testify at trial, nor did he concede that he had murdered Roth. Most of the defendant's case consisted of psychiatric testimony concerning his mental illness. Two expert witnesses testified that, at the time of the murder, the defendant was suffering from acute schizophrenia that seriously affected his ability to function and substantially limited his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law. See General Statutes § 53a-13. In rebuttal, the state offered one expert who was unable to state conclusively whether or not the defendant was legally sane at the time the murder was committed. The jury was instructed correctly that the state had the burden of proving beyond a reasonable doubt not only the essential elements of the felony murder charge, but also the defendant's sanity at the time of the murder.

I

The defendant claims that the trial court erred in admitting evidence of his prior conviction for a murder in Virginia. Prior to trial, the state had disclosed that it intended to introduce various instances of prior misconduct of the defendant, including his Virginia murder conviction. Before the defendant called his first expert witness on insanity, he requested an advance ruling barring the state from cross-examining his witnesses concerning his prior convictions, including the Virginia murder conviction. The court did not rule on the matter at that time, postponing a resolution until the substance of the psychiatrist's testimony had been heard. After the defendant concluded his direct exami-

nation of the expert witness, he renewed his motion to bar evidence of the prior convictions, claiming irrelevance and undue prejudice.[3] The court ruled that the state could inquire into the Virginia murder, stating that "when one gets into the question of insanity his entire life opens up, so to speak . . . ." On cross-examination the prosecutor attempted to elicit from the psychiatrist the effect the Virginia murder would have upon his conclusion that the defendant was criminally insane at the time of the murder of Roth.[4] The defendant objected to the prosecutor's mention of the detailed circumstances of the Virginia murder because there was no evidence of those facts. On the basis of the prosecutor's improper reference to these facts, the defendant made a motion for a mistrial. The court denied the motion but did instruct the prosecutor to limit his questions to the defendant's conviction for the robbery and murder of a guest at a Holiday Inn in Virginia and to refrain from discussing the facts underlying that conviction. The jury was then instructed to disregard any references to the circumstances of that

---

[3] On appeal the defendant also challenges the authenticity of the Virginia conviction because a certified copy of the judgment was not produced. See *State* v. *English,* 132 Conn. 573, 581–82, 46 A.2d 121 (1946). The defendant, however, waived his right to object on that ground, because, at trial, he objected only on the basis of relevancy and undue prejudice. In fact, the defendant told the court that he did not contest his conviction for the murder in Virginia but objected only to the particular facts underlying it, because there was no evidence of those facts.

[4] "Let me take you back to August 8, 1974, to the Holiday Inn in Richmond, Virginia..This accused is convicted of going into this room of a traveling salesman for Sperry Univac, beating him around the face and killing him and taking certain credit cards from him, leaving the room in total disarray, going out and getting caught with the credit cards. He has been convicted of that. Now, don't you think there is some similarity to that murder and what he is charged with here today? He is in a Holiday Inn in Richmond, Virginia. Mr. Carter told the police he was at the Holiday Inn, knew nothing about the murder and nothing about the credit cards. Someone was brutally beaten and robbed."

crime previously made by the prosecutor.[5] The prosecutor resumed cross-examination and the witness testified that the existence of a conviction for a prior similar act was not inconsistent with his conclusion that the defendant was a schizophrenic.

The defendant claims that the trial court should not have admitted evidence of the Virginia murder conviction because its prejudicial effect greatly exceeded its probative value. The basis for the trial court's admission of the defendant's prior murder conviction was that evidence of other crimes, especially those similar to the charged offense, is admissible because "a plea of insanity opens wide the door to all evidence relating to the defendant and his environment." *Wilson* v. *State,* 247 Ind. 454, 461, 217 N.E.2d 147 (1966). Recognizing that a plea of insanity triggers a broad inquiry into the defendant's entire life, courts have admitted evidence of prior misconduct because of its significance in showing the mental condition of the defendant, when such evidence would ordinarily be excluded. See *Thomason* v. *State,* 46 Ala. App. 10, 237 So. 2d 121 (1970); *Burgunder* v. *Arizona,* 55 Ariz. 411, 103 P.2d 256 (1940); *People* v. *Vanda,* 111 Ill. App. 3d 551, 444 N.E.2d 609 (1982); *Fulmer* v. *State,* 249 Ind. 261, 230 N.E.2d 307 (1967); *Wilson* v. *State,* supra; *State* v. *James,* 394 So. 2d 1197 (La. 1981); *People* v. *Wood,* 12 N.Y.2d 69, 187 N.E.2d 116, 236 N.Y.S.2d 44 (1962); *State* v. *Johnson,* 69 Wash. 2d 264, 418 P.2d 238 (1966); 1 Wharton, Criminal Evidence (13th Ed. 1972) § 222.

---

[5] In spite of the limiting instruction, the defendant also claims on appeal that the remarks of the prosecutor describing the murder so infected the fairness of his trial that a mistrial should have been granted. The trial court was justified in concluding that its curative instruction had rectified any prejudice that could have derived from the remarks and that a mistrial was not warranted. *State* v. *Couture,* 194 Conn. 530, 562–63, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985).

"Whenever insanity is asserted as a defense and is supported by any credible evidence, 'it is of critical importance that the defendant's entire relevant symptomology be brought before the jury . . . .' '[W]hen insanity is in issue, any and all conduct of the person is admissible in evidence.' To this end, the trial judge should permit 'an unrestricted inquiry into the whole personality of a defendant' and should 'be free in his admission of all possibly relevant evidence.' Any evidence of aberrant conduct or action, whether before or after the act charged, is accordingly admissible under the [insanity] plea." (Citations omitted.) *United States v. Smith,* 507 F.2d 710, 711 (4th Cir. 1974); see *Sulie v. Duckworth,* 689 F.2d 128, 131 (7th Cir. 1982), cert. denied, 460 U.S. 1043, 103 S. Ct. 1439, 75 L. Ed. 2d 796 (1983); *United States v. Madrid,* 673 F.2d 1114, 1122 (10th Cir.), cert. denied, 459 U.S. 843, 103 S. Ct. 96, 74 L. Ed. 2d 88 (1982); *United States v. Hauck,* 586 F.2d 1296, 1299 (8th Cir.), cert. denied, 441 U.S. 947, 99 S. Ct. 2170, 60 L. Ed. 2d 1050 (1978); *United States v. Davis,* 513 F.2d 319, 321 (5th Cir. 1975); *United States v. Hartfield,* 513 F.2d 254, 260 (9th Cir. 1975); *United States v. Brawner,* 471 F.2d 969, 976 (D.C. Cir. 1972); *Pope v. United States,* 372 F.2d 710, 736 (8th Cir. 1967); *Davis v. United States,* 364 F.2d 572, 574 (10th Cir. 1966).

Evidence of prior crimes is inadmissible merely to show bad character of the defendant or a tendency to commit criminal acts. *Spencer v. Texas,* 385 U.S. 554, 560–61, 87 S. Ct. 648, 17 L. Ed. 2d 606 (1967); *State v. Hauck,* 172 Conn. 140, 143–44, 374 A.2d 150 (1976). There are, however, several exceptions to this general rule. "Evidence of other misconduct, although not ordinarily admissible to prove the bad character or criminal tendencies of the accused, may be allowed for the purpose of proving many different things, such as intent, identity, malice, motive or a system of crimi-

nal activity." *State* v. *Ibraimov,* 187 Conn. 348, 353, 446 A.2d 382 (1982); see *State* v. *Smith,* 198 Conn. 147, 156–57, 502 A.2d 874 (1985); *State* v. *Falby,* 187 Conn. 6, 23, 444 A.2d 213 (1982); *State* v. *Brown,* 169 Conn. 692, 701, 364 A.2d 186 (1975). Where insanity has been raised as a defense to a crime, other misconduct bearing upon that issue is similarly admitted as an exception to the general prohibition against such evidence. Once the insanity defense is asserted by a defendant the state is entitled to use relevant evidence of prior crimes to rebut it. This rule, of course, is subject to the constraint that the probative value of the evidence must outweigh its prejudicial effect. See *State* v. *Shindell,* 195 Conn. 128, 134, 486 A.2d 637 (1985); *State* v. *Braman,* 191 Conn. 670, 676, 469 A.2d 760 (1983); *State* v. *Holliday,* 159 Conn. 169, 173, 268 A.2d 368 (1970).

The trial court concluded that evidence of the Virginia murder was relevant after the testimony of the psychiatrist who based his conclusions, in part, on the significance of the sexual assault which resulted in the defendant's arrest and on evidence of a subsequent bribe he offered to a police officer when in custody at the police station. The psychiatrist testified that it would be extremely significant and diagnostic of schizophrenic behavior to commit rape immediately after brutally murdering another person because "only a schizophrenic could . . . commit a murder of this magnitude . . . and then [commit] some form of sexual act." He also testified that falling asleep after the rape is highly indicative of insane conduct as it clearly evinces an individual's inability to appreciate the wrongfulness of his conduct. Further, the offering of a bribe, he contended, would be consistent with schizophrenic behavior. Since the psychiatrist had referred to two other crimes as having significance in buttressing his opinion, the court properly concluded that evidence of a prior murder conviction, especially

where the crime occurred only four months before the present incident and under similar factual circumstances, would also be relevant on the issue of insanity.

We are required also to determine whether the probative value of the evidence is outweighed by its potential for unfair prejudice. *State* v. *Braman,* supra. Although the defendant here did not admit that he had killed the victim, the focus of the defendant's case was clearly his insanity at the time of the murder. It is difficult to perceive, therefore, how the evidence of the Virginia murder was so prejudicial as to outweigh its probative value on the issue of insanity. The danger of "other crimes" evidence is that a jury may use the information not for the limited purpose of its admission, but to establish the guilt of the perpetrator of the crime by assuming that " 'if he did it before, he probably did so this time.' " *Gordon* v. *United States,* 383 F.2d 936, 940 (D.C. Cir. 1967), cert. denied, 390 U.S. 1029, 88 S. Ct. 1421, 20 L. Ed. 2d 287 (1968). In bringing before the jury evidence of the crimes of sexual assault and bribery as a basis for the opinion of the psychiatrist upon the insanity issue, the defendant must have been aware of the risk that the persuasiveness of the state's evidence that he was the killer would be enhanced. He recognized, nevertheless, the significant probative value of such evidence upon his principal defense to the crime, insanity at the time of its commission. Although it must be conceded that the Virginia murder had a greater potential for prejudice because of its similarity to the crime charged, its relevance upon the insanity issue was clearer than that of the other crimes for the same reason. In fact, one of the psychiatrists testified, after the court had allowed the inquiries related to the Virginia murder, that "only someone who is schizophrenic can really . . . commit the same horrendous crime twice in so short a period of time." This evidence, therefore, provided an addi-

tional basis for the defendant's defense of insanity. The state did not attempt to use evidence of the Virginia murder solely to establish his propensity to commit a violent murder. The state referred to the Virginia conviction only to refute the expert's conclusions regarding the defendant's insanity. Finally, the court instructed the jury to consider the evidence only on the issue of insanity and not as proof that he had committed the crime in question. See *United States* v. *Emery,* 682 F.2d 493, 500 (5th Cir. 1982). In light of these factors, we cannot say that the trial court abused its discretion in concluding that the evidence was admissible on the issue of insanity because its probative value on the issue outweighed any possible prejudicial effect.

## II

The defendant also claims that the trial court's instructions to the jury on the issue of insanity were erroneous because they included not only the appropriate statutory definition of insanity found in General Statutes § 53a-13, but also previously accepted common law definitions. See *State* v. *Toste,* 178 Conn. 626, 424 A.2d 293 (1979); *M'Naghten's Case,* 8 Eng. Rep. 718, 722 (1843). We decline to review this claim because the defendant failed properly to except to the instructions.

The defendant filed a written request to charge on the insanity issue, urging the court to charge the jury upon the statutory definition of insanity.[6] During its charge to the jury, the court on four occasions correctly recited the statutory definition. After the second recitation of the statutory standard, however, the court further defined insanity by providing the jury with two outdated common law definitions. At the conclusion of

---

[6] Although the defendant did file a request to charge on the statutory definition of insanity, this cannot be viewed to preserve his appellate claim with respect to the nonrequested definitions because the court's charge did conform to the defendant's request by including the statutory standard on four occasions.

the charge, the defendant did except to the trial court's definition of insanity but only to the extent that it failed "to actually define the terms disease and defect" and "to provide a standard by which the jury can, in fact, decide whether a disease or defect was present." The defendant did not raise any exception with respect to the use of the common law definitions. The requirement that the claim be raised "distinctly" means that it must be "so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked." (Emphasis added.) *Woodruff* v. *Butler,* 75 Conn. 679, 682, 55 A. 167 (1903). The exception to the charge was inadequate to alert the trial court to the specific deficiency now claimed on appeal.

The failure of the defendant to state distinctly the matter being objected to immediately after the conclusion of the charge ordinarily renders the claim of error unreviewable on appeal. See Practice Book §§ 854, 3063. In the absence of a specific timely exception, a claim of error is "reviewable as an exceptional circumstance within the doctrine of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), only when the defendant can demonstrate that he has clearly been deprived of a fundamental constitutional right and a fair trial,[7] or under Practice Book § 3063 as plain error."[8] *State* v. *Preyer,* 198 Conn. 190, 196–97, 502 A.2d 858 (1986).

As we recently have held in *State* v. *Hinckley,* 198 Conn. 77, 87, 502 A.2d 388 (1985), and in *State* v. *Harman,* 198 Conn. 124, 134, 502 A.2d 381 (1985), the

---

[7] This case cannot be considered to fall under the first exceptional circumstance of *Evans* of a newly discovered constitutional right not readily foreseeable at the time of trial. *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973); *State* v. *Vars,* 154 Conn. 255, 271–72, 22 A.2d 744 (1966).

[8] "[Practice Book] Sec. 3063. ERRORS CONSIDERED

"The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interest of justice notice plain error not brought to the attention of the trial court."

failure properly to object to a court's charge on insanity renders the claim of error unreviewable by this court even under the exceptional circumstances doctrine of *State* v. *Evans,* supra, because the trial court is under no *constitutional* obligation to charge the jury with a definition of insanity that is "beyond criticism in every particular." *State* v. *Harman,* supra. In each of those cases, because the defendants took no exception to the trial court's charge on insanity their respective claims of error were not reviewed by this court. See *State* v. *Jackson,* 198 Conn. 314, 502 A.2d 865 (1986). The fact that the defendant here did except to the court's insanity charge does not alter the analysis, because he failed to identify specifically in his exception the inclusion of the outdated definitions.

In this case, the court charged the jury four times with the proper statutory definition of insanity. The mere fact that the court once interjected additional common law definitions of insanity does not raise any fundamental constitutional right that would warrant review. Nor has the presence of the additional insanity definitions "constituted a manifest injustice to the defendant so as to impair the effectiveness or integrity of his trial," as is necessary to establish plain error. *State* v. *Hinckley,* supra, 88.

There is no error.

In this opinion the other judges concurred.