### STATE OF CONNECTICUT v. JOHN D. CHAUVIN
### (3733)

DUPONT, C. J., HULL and SPALLONE, Js.

Argued June 5—decision released July 29, 1986

*Richard R. Brown,* for the appellant (defendant).

*James G. Clark,* deputy assistant state's attorney, with whom, on the brief, was *James E. Thomas,* assistant state's attorney, for the appellee (state).

HULL, J. On December 23, 1982, the defendant was arrested and charged with manslaughter in the first degree, a violation of General Statutes § 53a-55. After

a trial to the court, the defendant was convicted of the lesser included offense of manslaughter in the second degree. From this judgment the defendant appeals, claiming that the trial court erred in admitting evidence of prior acts of misconduct and pending charges.[1] We find no error.

The trial court could reasonably have found the following facts. On December 21, 1982, from approximately 9:30 p.m., the defendant, his wife Donna Chauvin, her grandfather and the couple's daughter Lisa Chauvin were all at their Bristol home. Sometime after 11 p.m., Lisa was awakened by what she described as furniture moving in her parents' room. Although it was too dark to see details of the activity in the room, Lisa saw a struggle going on between her mother and father. She ran to the telephone in the kitchen and called the police. A short time later the defendant called to Lisa from his bedroom and told her that everything was fine and that Donna was asleep. Lisa then made a second call to the police cancelling the first call.

Approximately ten minutes later, the defendant came out of the bedroom and announced that Donna had drugged him and that she was lying on the floor. The defendant said he did not know if she was alive. He then told Lisa that he and Donna got into an argument and that he had strangled her. He repeated the story again to Lisa and later to several police officers. The defendant prevented Lisa from calling an ambulance for a short time, but she eventually was able to make the call. By the time the emergency medical personnel arrived at the house, Donna had no effective brain function. She died from her injuries on January 17, 1983.

[1] In his preliminary statement of issues, the defendant makes other claims of error. As he failed to brief or argue them, however, they are deemed to be abandoned. See *State* v. *Samaha,* 180 Conn. 565, 565 n.1, 430 A.2d 1290 (1980).

The defendant did not testify at trial, nor did he assert that he had not been the cause of his wife's death. Rather, he relied on a defense of mental disease or defect.[2] Much of the defendant's case consisted of psychiatric testimony concerning his mental illness. Michael Sheard and Walter Borden, both psychiatrists, testified that, at the time of the murder, the defendant was suffering from mental disease or defect. Sheard opined that the defendant was unable to conform his conduct to the law. Borden expressed the opinion that the defendant lacked substantial capacity either to appreciate the nature and wrongfulness of his conduct or to conform his conduct to the law. Both experts admitted that they had relied primarily on conversations with the defendant to form their opinions. When alerted to factual errors in the defendant's rendition of events, Sheard stated that "it certainly makes me have more doubt about the situation." He acknowledged that if the defendant's assertions were not true, he could not form the opinions already stated. Borden also admitted that his diagnosis required a truthful account of events from the defendant. He stated that it would be important to his diagnosis "if there was a substantial indication of antisocial tendencies." In his conversations with Borden, the defendant had denied any "antisocial behavior" other than one arrest several years earlier.

In rebuttal, the state offered one expert who was unable to state conclusively whether or not the defendant was able to appreciate the wrongfulness of his

[2] General Statutes (Rev. to 1981) § 53a-13 provides in part: "In any prosecution for an offense, a defendant may be found guilty but not criminally responsible if, at the time of the proscribed conduct, he lacked substantial capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law."

behavior.[3] That expert also testified that the contradictory remarks made by the defendant led him to doubt the defendant's credibility.

The defendant claims that the trial court erred in admitting evidence that he had committed prior acts of misconduct and that there were larceny charges pending against him. The defendant, however, did not except to the testimony concerning the prior acts of misconduct but only to that concerning the pending larceny charges. This court generally will not review any rulings on evidence where no exception was taken by counsel. *State* v. *Baker,* 182 Conn. 52, 56, 437 A.2d 843 (1980); *State* v. *Jackson,* 3 Conn. App. 132, 134–35, 485 A.2d 934 (1985). Only the most exceptional circumstances will save a claim from the fatal consequences of counsel's failure to make a timely exception. *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). This case does not present such circumstances. See *State* v. *Smith,* 198 Conn. 147, 156, 502 A.2d 874 (1985) (rule concerning admission of evidence of other crimes is a rule of evidence, not of constitutional law). Thus, we decline to consider this claim.

The testimony that is the subject of the remaining claim was given by Alan Medvec, former brother-in-law of the defendant. On direct examination, the prosecutor asked Medvec if he was aware that the defendant had larceny charges pending against him. Over objection from defense counsel, Medvec answered affirmatively and was allowed to elaborate as to his knowledge of the circumstances surrounding those allegations.

---

[3] Donald Grayson, a psychiatrist, the state's expert, testified that "[i]f [the defendant] was, indeed, drugged or delirious, as he indicated, it would be my opinion that he was probably unable to appreciate the wrongfulness of his behavior or to conform his behavior to the expectations of the law. If, however, he were not delirious, I would have to assume that he could conform his behavior to the expectations of the law."

The defendant asserts that Medvec's testimony was improperly admitted for two reasons: it was prejudicial, thereby depriving him of a fair trial and there was no proper foundation laid for its introduction. The defendant has referred to no legal authority for the latter claim, however. Bare assertions of error without citation to legal authority may constitute an abandonment of a claim. *State* v. *Anderson,* 6 Conn. App. 15, 23 n.7, 502 A.2d 446 (1986). We therefore decline to address the issue of whether there was a proper foundation for the testimony.

The defendant's other reason for his assertion that the trial court erred in admitting Medvec's testimony concerning the larceny charges pending against him is that it was prejudicial.[4] "Evidence of other misconduct, although not ordinarily admissible to prove the bad character or criminal tendencies of the accused, may be allowed for the purpose of proving many different things, such as intent, identity, malice, motive or a system of criminal activity." *State* v. *Ibraimov,* 187 Conn. 348, 352, 446 A.2d 382 (1982). In *State* v. *Carter,* 198 Conn. 386, 393, 503 A.2d 576 (1986), our Supreme Court recently acknowledged another exception to the prohibition on the use of evidence of prior crimes: where insanity is raised as a defense. In that case, the court held that "[o]nce the insanity defense is asserted by a defendant the state is entitled to use relevant evidence of prior crimes to rebut it . . . subject to the constraint that the probative value of the evidence must outweigh its prejudicial effect." Id.

---

[4] We note that the defendant does not claim that the evidence that he committed the larcenies was insufficient to support a jury finding that he had in fact committed the crimes. See *State* v. *Wilson,* 199 Conn. 417, 449, 507 A.2d 1367 (1986) (before evidence of prior crimes can have any probative value, there must be a preliminary showing sufficient to support a jury finding that the defendant committed the prior crimes).

Here, the probative value of the evidence was very high. Both of the defendant's experts, Borden and Sheard, testified that they relied on the accuracy of the history the defendant provided to them to reach their conclusions as to his sanity, a central issue in this case. The state introduced evidence of the larceny charges to show that the ground relied on by the psychiatrists, that is the honesty of the defendant, was not firm. Thus, the probative value of the evidence with respect to the psychiatric diagnosis is clear. See id.

The possibility of prejudice from admission of the challenged evidence was minimal. The pending charges, larceny, were not so similar to the crime for which the defendant was being tried, murder, as to raise a realistic danger that the trier "may use the information not for the limited purpose of its admission, but to establish the guilt of the perpetrator of the crime by assuming that 'if he did it before, he probably did so this time.' *Gordon* v. *United States,* 383 F.2d 936, 940 (D.C. Cir. 1967), cert. denied, 390 U.S. 1029, 88 S. Ct. 1421, 20 L. Ed. 2d 287 (1968)." *State* v. *Carter,* supra, 394. Additionally, the analysis used by our Supreme Court in *Carter,* that because "the focus of the defendant's case was clearly his insanity at the time of the murder, [i]t is difficult to perceive . . . how the evidence of the [larceny] was so prejudicial as to outweigh its probative value on the issue of insanity"; id; is equally applicable here.

The probative value of the pending larceny charge in this case is clear and obvious: the credibility of the defendant was the key factor underlying the opinions of the psychiatrists who testified. Those opinions could not have been made with such certainty had there been more evidence of "anti-social behavior." In light of that probative value and the small possibility of prejudice,

we conclude that the trial court did not abuse its discretion in admitting the testimony.

There is no error.

In this opinion the other judges concurred.