EUGENE SHENEFIELD ET AL. *v.* GREENWICH
HOSPITAL ASSOCIATION ET AL.
(3972)
(3976)

DUPONT, C. J., HULL and SPALLONE, Js.

240

Argued October 9, 1986—decision released March 24, 1987

*Gregory C. Willis,* with whom, on the brief, was *Jennifer M. Damon,* for the (named defendant).

*Ronald D. Williams,* for the appellant (defendant Dovell N. Bonnett).

*Joseph S. Jurewicz,* with whom, on the brief, was *Marylouise S. Black,* for the appellee (named plaintiff).

DUPONT, C. J. These appeals, which were heard and decided together, arise out of a malpractice action brought by the plaintiffs, a husband and wife,[1] against the defendants, a medical doctor and a hospital. A jury

---

[1] The marriage of the parties was dissolved on June 9, 1984. The suit of the plaintiffs for malpractice was instituted on June 17, 1979, and the jury reached its verdict on December 11, 1984.

entered a general verdict in favor of the plaintiff husband against both defendants, and in favor of the plaintiff wife against the doctor only. The plaintiff husband was awarded $195,000 in damages and the plaintiff wife was awarded $1 in damages for loss of consortium.[2]

The jury could have reasonably found the following facts. The plaintiff first consulted the defendant doctor in 1975 for the treatment of an enlarged prostate. He later consulted the doctor in 1977 because of urethral bleeding. He was advised by the doctor that he had a tumor. The surgical procedures of a retropubic prostatectomy and cystoscopy were subsequently recommended. The plaintiff consented to the proposed surgery, and was thereafter admitted to the defendant hospital. At the time, the plaintiff was sixty-seven years old and had five children.

Prior to the surgery, the defendant doctor brought a hospital consent form into the plaintiff's hospital room, but failed either to explain the form or to engage in any substantial conversation with the plaintiff. The consent form of the defendant hospital contained express instructions for hospital officers which required them specifically to include on the form the "names of operations involving loss of important functions, such as . . . hysterectomy, vasectomy, tubal ligation, etc." In addition, the consent form contained language which gave the signer's permission for the prostatectomy and cystoscopy, and for any other additional procedures deemed advisable by the doctor following any unforeseen condition arising "before, during or after such operation." The plaintiff signed the consent form, and surgery was performed by the defendant doctor on the following morning.

---

[2] Unless otherwise noted in the text of this opinion, the word "plaintiff" refers to the plaintiff husband.

The plaintiff later discovered that the defendant doctor had performed a bilateral vasectomy, without his knowledge or consent, as well as the proposed prostatectomy. In addition, he experienced impotency resulting from the prostatectomy. The plaintiff thereafter brought a complaint alleging negligence on the part of both the doctor and the hospital for failing to obtain any consent for the vasectomy, and for failing to obtain an informed consent for the prostatectomy because he was not told that impotency was one of its attendant risks. In his complaint, the plaintiff claimed injuries consisting of sexual sterilization, sexual impotency and emotional stress and anxiety.

The trial court submitted extensive interrogatories to the jury to aid it in reaching its verdicts. In answering the interrogatories, the jury found that the doctor failed to obtain either the plaintiff's consent to the vasectomy or his informed consent to the prostatectomy, and that such failures were a proximate cause of the plaintiff's injuries. The jury also found that the doctor was acting as the agent of the defendant hospital when he failed to obtain the plaintiff's consent to the vasectomy and when he failed to obtain an informed consent to the prostatectomy.

I

Three of the defendants' claims of error[3] challenge the trial court's charge to the jury. The defendants

---

[3] The claims of error of both defendants coincide as to many of the issues raised. Many pages of both of the defendants' briefs are verbatim duplicates of each other although the issues are discussed in different order in their briefs.

The defendants have alleged in their briefs that the trial court made numerous evidentiary errors which were prejudicial in their cumulative effect. The defendants have failed, however, to properly brief these issues. Their argument consists primarily of excerpts from the transcript, and contains no legal argument or citation of legal authority. We therefore deem these issues to be abandoned. McGaffin v. Roberts, 193 Conn. 393, 399 n.6, 479 A.2d 176 (1984) cert. denied, 470 U.S. 1050, 105 S. Ct. 1747, 84 L.

claim that the trial court erred in its charge to the jury on proximate cause because it instructed the jury that the plaintiff could prove proximate cause in either of two ways. In addition, the defendant hospital claims that the trial court erred in its charge to the jury on agency.

These challenges to the trial court's instructions to the jury, however, have not been presented properly in this court, and we therefore decline to consider them. See *Henderson* v. *Levy,* 183 Conn. 517, 518, 441 A.2d 10 (1981). Practice Book § 4065 (d) (2) (formerly § 3060 F [d] [2]) provides that "[w]hen error is claimed in the charge to the jury, the brief or appendix shall include a verbatim statement of all relevant portions of the charge and all relevant exceptions to the charge. Evidence relevant to the claimed error shall be printed in narrative form with appropriate references to the page or pages of the transcript." The defendants' references in their briefs to pages of the trial transcript do not constitute compliance with this rule. *Henderson* v. *Levy,* supra. Moreover, our Supreme Court has recognized that "[i]t does not appear that a strict adherence to this rule will cause surprise or injustice; Practice Book § 3164 [now § 4187]; *Savarese* v. *Hart,* 183 Conn. 416, 418, 439 A.2d 386 (1981); especially when the claim of

Ed. 2d 813 (1985); *In re Juvenile Appeal (85-3),* 3 Conn. App. 194, 197–98, 485 A.2d 1369 (1985); *New England Whalers Hockey Club* v. *Nair,* 1 Conn. App. 680, 682 n.2, 474 A.2d 810 (1984).

Moreover, even despite this deficiency in the defendants' briefs, we find that the issue evades appellate review. Although the defendants objected to the admission of the evidence during the trial, neither defendant, during the course of argument on their motions for judgment notwithstanding the verdict and for directed verdicts, mentioned any such errors in evidentiary rulings. Their motions to set aside also did not mention any of these errors now claimed on appeal. The failure of the defendants to mention these claimed errors at the time of the postjudgment motions causes our review to be limited to that of plain error. *Kolich* v. *Shugrue,* 198 Conn. 322, 325–26, 502 A.2d 918 (1986). None of the evidentiary rulings made by the trial court relate to the extraordinary situation of a contamination of the fairness of the judicial proceedings. Id., 326.

error relates to a matter which lies largely in the discretion of the trial court." *Henderson* v. *Levy,* supra, 518–19.[4]

## II

The defendants' next claim of error relates to the trial court's submission to the jury of special interrogatories. The defendants allege that such interrogatories incorporated conflicting standards of proximate cause

[4] We note that even if the defendants had properly presented their claims of error in this court, the issues are not reviewable by this court. The defendants' claims of error relating to the jury charges were not excepted to at the trial court level. In order to review claims of error relating to jury instructions, such claims must be raised at the trial court either by a proper request to charge or by an exception to the charge. *State* v. *Kurvin,* 186 Conn. 555, 565, 442 A.2d 1327 (1982); see Practice Book §§ 852, 854. "The purpose of the rule is to alert the [trial] court to any claims of error while there is still an opportunity for correction in order to avoid the economic waste and increased court congestion caused by unnecessary retrials." *State* v. *Packard,* 184 Conn. 258, 281, 439 A.2d 983 (1981).

The record reflects that the defendant hospital excepted *only* to the trial court's failure to include its requests to charge in the instructions to the jury. The defendants did *not,* however, specifically except to the trial court's inclusion of the two separate standards used for determining proximate cause in its charge to the jury. Exceptions to a trial court's charge must be distinct and specific to preserve the claim. *State* v. *Carter,* 198 Conn. 386, 396, 503 A.2d 576 (1986). "The requirement that the claim be raised 'distinctly' means that it must be 'so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked.' (Emphasis added.) *Woodruff* v. *Butler,* 75 Conn. 679, 682, 55 A. 167 (1902)." *State* v. *Carter,* supra, 396. The defendant's exception to the trial court's charge was therefore inadequate to specifically alert the trial court to the error now claimed on appeal.

In their briefs, the defendants assert that a request to charge was made on proximate cause regarding the doctrine of informed consent. They have not, however, complied with our rules of practice and have failed to request the clerk of the trial court to include, in the certified file, copies of the relevant written request to charge. Practice Book § 4065 (d) (1) (formerly 3060F). It therefore is impossible for us to determine the propriety of the defendant's request to charge. Moreover, no request to charge was made by the defendants on agency.

The defendants' failure to either except to the jury charge immediately after the charge was given or to provide a record of a proper request to charge precludes appellate review of their claims of error. The defendants have not shown, nor do we find, any exceptional circumstances to warrant this court's review, and we therefore decline to do so.

which resulted in inconsistent answers by the jury, thereby necessitating that the verdict be set aside.[5] The defendants also claim that such interrogatories were lengthy and prejudicial, and that the trial court abused its discretion by submitting them to the jury.

Twelve interrogatories spanning sixteen pages were submitted to the jury in the present case. Interrogatories number 6 (c) and 7 (c) asked the jury if, in reaching the conclusion that the doctor's negligence was a proximate cause of the plaintiff's injuries, they found that "(1) plaintiffs proved that plaintiff Eugene Shenefield would not have undergone the operative procedure(s) performed on May 24, 1977 if he had been properly informed prior to the surgery? *and/or* that: (2) plaintiffs proved that a reasonable man in the plaintiff Eugene Shenefield's position would not have undergone the operative procedure(s) performed on May 24, 1977 if he had been properly informed prior to the surgery?"[6] The jury responded "yes" to the first question and "no" to the second question.

[5] At the postjudgment hearing, the defendants also asserted that the jury's verdicts were inconsistent because they found for the plaintiff wife against the defendant doctor, but against her in her case against the defendant hospital. We note that the jury's verdicts were not necessarily inconsistent. The plaintiff wife sought damages for loss of consortium, and her case was subsidiary to that of her husband. The jury's answers to the interrogatories reflect that the jury found the defendant doctor and *not* the defendant hospital liable to the plaintiff husband because of the doctor's failure to take a proper background and family history from him. This failure may have been found by the jury to have been the proximate cause of injury to the wife, rather than any negligence on the part of the defendant hospital.

[6] The interrogatories submitted by the trial court incorporated the two separate standards of proximate cause recognized in informed consent cases. Under the "subjective" standard, the test is whether, viewed from the point at which he had to decide, the patient would have decided differently had he been properly informed. See *Canterbury* v. *Spence,* 464 F.2d 772, 790 (D.C. Cir.), cert. denied, 409 U.S. 1064, 93 S. Ct. 560, 34 L. Ed. 2d 518 (1972); *Wilkinson* v. *Vesey,* 110 R.I. 606, 295 A.2d 676 (1972). Under the "objective" standard, on the other hand, the question of causality is resolved "in terms of what a prudent person in the patient's position would have decided if suitably informed of all perils bearing significance." *Canterbury*

The defendants submit that the trial court erred in submitting both standards for causation to the jury, and that the answers given by the jury were clearly inconsistent. They rely upon the holding in *Logan* v. *Greenwich Hospital Assn.*, 191 Conn 282, 465 A.2d 294 (1983), as support for their claim. In *Logan,* the doctrine of informed consent was recognized as a basis for malpractice liability of a physician. The *Logan* court did not, however, expressly adopt a standard for demonstrating proximate cause.[7] The defendants claim that an objective standard should be adopted in this jurisdiction, and that the jury's finding that the plaintiff did not prove that a reasonable man in the same position would not have undergone the same procedures if he had been properly informed precluded the entry of a verdict for the plaintiff.

In essence, the defendants' claim is that the jury's verdict should be set aside because of its allegedly inconsistent answers to the trial court's special interrogatories. The role of an appellate court where an appellant seeks a judgment contrary to a general verdict on the basis of the jury's allegedly inconsistent answers to such interrogatories is extremely limited. See *Belchak* v. *New York, N. H. & H. R. Co.,* 119 Conn. 630, 179 A. 95 (1935); *Murteza* v. *State,* 7 Conn. App.

v. *Spence,* supra, 791. Because of the facts presented here, we need not decide in this case which standard is the appropriate standard for determining causation that should be adopted by this court.

[7] In *Logan* v. *Greenwich Hospital Assn.*, 191 Conn. 282, 465 A.2d 294 (1983), our Supreme Court adopted the "lay standard" of disclosure recognized by the court in *Canterbury* v. *Spence,* 464 F.2d 772, 790 (D.C. Cir. 1972), which set forth the *scope* of disclosure necessary once circumstances give rise to a duty of the physician to inform the patient. *Logan* v. *Greenwich Hospital Assn.,* supra, 293. Such standard obligates the physician "to provide the patient with that information which a reasonable patient would have found material for making a decision whether to embark upon a contemplated course of therapy." Id., 292–93. The court did not, however, expressly adopt a standard to be used in determining whether there is a causal connection between the breach of the doctor's legal duty to inform and the injury claimed by the plaintiff.

196, 202–203, 508 A.2d 449, cert. denied, 200 Conn. 803, 510 A.2d 191 (1986). "To justify the entry of a judgment contrary to a general verdict upon the basis of answers to interrogatories, those answers must be such in themselves as conclusively to show that as a matter of law judgment could only be rendered for the party against whom the general verdict was found; *they must negative every reasonable hypothesis as to the situation provable under the issues made by the pleadings;* and in determining that, the court may consider only the issues framed by the pleadings, the general verdict and the interrogatories, with the answers made to them, without resort to the evidence offered at the trial." (Emphasis added.) *Belchak* v. *New York, N. H. & H. R. Co.,* supra, 634. Thus, if any reasonable hypothesis may be formulated, the general verdict for the plaintiff is justified, despite any alleged inconsistency. Id., 635. Moreover, in reviewing a motion to set aside a verdict, both the trial court and this court should give the most reasonably favorable construction to the evidence in order to sustain the verdict. *Kalleher* v. *Orr,* 183 Conn. 125, 126–27, 438 A.2d 843 (1981); *Waldron* v. *Raccio,* 166 Conn. 608, 618, 353 A.2d 770 (1974); Reilly v. *DiBianco,* 6 Conn. App. 556, 573, 507 A.2d 106, cert. denied, 200 Conn. 804, 510 A.2d 192 (1986). The trial court's refusal to set aside the verdict is therefore entitled to great weight, and every reasonable presumption should be given in favor of its correctness. *Waldron* v. *Raccio,* supra, 618.

In the present case, the plaintiff's amended complaint alleged that injury was suffered due to the negligence of the defendants in one or more of *several* ways.[8] The failure of the defendant doctor to obtain the informed consent of the plaintiff for the prostatectomy was but one of the grounds of negligence alleged by the plaintiff. Another ground alleged was the failure of the doc-

---

[8] The plaintiff alleged that the defendant hospital was negligent in "one or more" of fourteen separate respects. The plaintiff alleged that the defendant doctor was negligent in "one or more" of eleven separate respects.

tor, while acting as an agent of the defendant hospital, to obtain *any* consent at all prior to performing a vasectomy. The jury's answers to the interrogatories clearly showed that it found that the defendant had failed to obtain such consent, and that such failure constituted negligence.

Our courts have long adhered to the principle that the theory of *assault* or *battery* as a basis for recovery against a physician is applicable to the situation where that physician fails to obtain any consent at all from his patient prior to performing an operation, or "performs a different procedure from the one for which consent has been given . . . ." *Logan* v. *Greenwich Hospital Assn.,* supra, 289; *Schmeltz* v. *Tracy,* 119 Conn. 492, 495–96, 177 A. 520 (1935). The theory of negligence, on the other hand, has been recognized as being applicable to cases in which it is alleged that the physician failed to obtain an *informed* consent. *Logan* v. *Greenwich Hospital Assn.,* supra; *Natanson* v. *Kline,* 186 Kan. 393, 402, 350 P.2d 1093, reh. denied, 187 Kan. 186, 354 P.2d 670 (1960). In the present case, however, the plaintiff did not allege assault or battery, but rather alleged negligence on the part of the defendants for their failure to procure his consent to the vasectomy.

A physician is under a duty to exercise that degree of care, skill and diligence to his patient which physicians in the same general line of practice ordinarily possess and exercise in similar cases. *Cross* v. *Huttenlocher,* 185 Conn. 390, 393, 440 A.2d 952 (1981), citing *Katsetos* v. *Nolan,* 170 Conn. 637, 644–45, 368 A.2d 172 (1976). To sustain a negligence action, therefore, the plaintiff must establish through expert testimony both the standard of care and the fact that the defendant's conduct deviated from that standard. *Cross* v. *Huttenlocher,* supra. The evidence in the present case was sufficient to establish that the customary standard of care of physicians in the same practice as that of the defendant doctor was to obtain the patient's consent prior to per-

forming any operation. Moreover, the instructions to the doctor contained in the consent form specifically required him to include such operations as a vasectomy on the form prior to obtaining the patient's signature. The failure of the doctor, while acting as an agent of the hospital, to fulfill his duty supported the jury's finding of negligence on the part of both the doctor and the hospital.

The trial court's interrogatories regarding the two separate standards of proximate cause are only applicable to claims alleging a lack of *informed* consent. See, e.g., *Canterbury* v. *Spence,* 464 F.2d 772 (D.C. Cir.), cert. denied, 409 U.S. 1064, 93 S. Ct. 560, 34 L. Ed. 2d 518 (1972); *Wilkinson* v. *Vesey,* 110 R.I. 606, 295 A.2d 676 (1972). Such standards are inapplicable to the negligence specifically found by the jury regarding the failure of the defendants to obtain *any* consent for the vasectomy. As such, the reference to such standards in the interrogatories relating to this negligence was merely superfluous and irrelevant. Although the fact sought to be elicited from an interrogatory ordinarily "must be pertinent to some issue, and one which may be of material weight in deciding it"; *Freedman* v. *New York, N.H. & H.R. Co.,* 81 Conn. 601, 614, 71 A. 901 (1909); we do not find that the inclusion of the superfluous interrogatories necessitates a finding of error in this case. Interrogatories merely ask for findings of *fact* and never ask for a conclusion of law. Id., 612. Thus, merely because the jury found that the plaintiff did not prove that a reasonable man in the plaintiff's position would not have undergone the vasectomy had he been properly informed does *not* mean that it found that the defendants' negligence in failing to obtain such consent did not proximately cause the plaintiff's injuries. The jury's answer to this interrogatory regarding this standard of proximate cause was nugatory. In its charge to the jury, the trial court gave an appropriate and clear instruction on proximate cause with-

out referring to the standards involved in actions involving informed consent.[9] Interrogatories are submitted to the jury in conjunction with the instructions, and are not vacuous words. *Tripp* v. *Anderson,* 1 Conn. App. 433, 439, 472 A.2d 804 (1984). We find, therefore, that based upon the complaint, the record, and the jury's response to the interrogatories finding the defendants negligent in at least one of the respects set forth in the complaint, a verdict had to enter for the plaintiff as a matter of law.

The defendants' claim that the interrogatories were lengthy and prejudicial likewise has no merit. The decision to submit interrogatories to a jury rests within the trial court's discretion. *Tripp* v. *Anderson,* supra, 438. The use of such interrogatories "is particularly appropriate in cases involving complicated factual determinations or complex legal issues." *Gaulton* v. *Reno Paint & Wallpaper Co.,* 177 Conn. 121, 126, 412 A.2d 311 (1979). The length and form of the interrogatories are determined by the trial court in the context of the case and should not be the basis of error unless there is a clear abuse of discretion. The trial in the present case spanned forty-three days, involved complicated factual determinations and complex issues, and resulted in twelve volumes of transcript submitted on appeal. We do not find that the twelve interrogatories submitted to the jury in the present case were so numerous as to confuse or perplex the jury in rendering their verdict. The trial court should be commended and not condemned for its preparation of interrogatories.

There is no error.

In this opinion the other judges concurred.

---

[9] In its charge to the jury, the trial court stated: "Now in order to prove that he is entitled to a verdict here, the Plaintiff has to prove negligence on the part of one or both of the Defendants, and that such negligence was a proximate cause — that is a substantial factor in causing. Proximate cause does not mean it's one hundred percent cause, it just means a substantial factor in causing the injuries that he claims."