PAULA J. PAPA *v.* CHRISTOPHER R. PAPA
(AC 17683)

Schaller, Hennessy and Kulawiz, Js.[1]

---

[1] This appeal was argued before a panel comprised of Judges Schaller, Hennessy and Kulawiz. Although Judge Kulawiz agreed with the other two judges regarding the resolution of this appeal, she died before she had the opportunity to concur with the written decision. The parties stipulated, however, that they would not reargue the appeal to this court with a panel consisting of the original two judges and an additional judge. Rather, the parties stipulated that they would permit the remaining two judges alone to render a decision.

Argued December 1, 1998—officially released September 21, 1999

*Jeffrey D. Ginzberg*, with whom, on the brief, was *Kenneth M. Potash*, for the appellant (defendant).

*Jacqueline A. Wilson*, for the appellee (plaintiff).

### Opinion

SCHALLER, J. The defendant in this action for the dissolution of a marriage appeals from the judgment of the trial court. The defendant claims that the trial court improperly (1) ordered him to purchase life insurance without evidence of the cost or availability of life insurance to him, (2) determined that he was liable to the plaintiff for unpaid mortgage obligations under a pendente lite order, (3) determined his child support payments, (4) ordered him to pay child support despite a de facto shared custody agreement between the parties and (5) awarded counsel fees to the plaintiff. We reverse the judgment of the trial court in part.

The following facts and procedural history are necessary for a proper resolution of this appeal. The plaintiff, Paula J. Papa, and the defendant, Christopher R. Papa, were married on May 26, 1984, and, at the time of trial, had three minor children.

The plaintiff brought this dissolution action on November 21, 1995. On January 29, 1996, the parties entered into a pendente lite agreement whereby the defendant would be responsible for paying (1) the mortgage on the marital residence, including all past due amounts and (2) life insurance premiums for the plaintiff and the children. In addition, the parties agreed to refer the dissolution matter to the family relations counselor for mediation.

On May 6, 1997, the parties reached an agreement concerning custody and visitation. That same day, the trial court rendered judgment dissolving the marriage, finding that it had broken down irretrievably. Because the parties could not agree on the financial issues, the matter was continued to a later date by the court for a hearing on those issues.

On September 26, 1997, following a two day trial, the court entered orders regarding alimony, child support, insurance and other matters. As part of the dissolution decree, the court ordered the defendant (1) to pay $15,000 in alimony for mortgage payments that he had failed to pay pursuant to the pendente lite agreement, (2) to pay $350 per week in child support, (3) to purchase and maintain a life insurance policy in an amount not less than $100,000, naming the children of the marriage as beneficiaries and (4) to pay $7500 to the plaintiff for counsel fees.

I

The defendant first claims that the trial court improperly ordered him to purchase and maintain a life insurance policy naming the children of the marriage as beneficiaries. Specifically, the defendant claims that because the court did not have evidence of the availability or cost of life insurance or evidence of the defendant's insurability, the court abused its discretion. We agree.

"Our standard of review in a domestic relations case is well settled. We will not substitute our judgment for that of the trial court and will not disturb an order of the trial court absent an abuse of discretion or findings lacking a reasonable basis in the facts." *Paddock* v. *Paddock*, 22 Conn. App. 367, 372, 577 A.2d 1087 (1990).

An order of life insurance "is very often an appropriate and necessary component of a judgment of dissolution of marriage. Indeed, orders requiring the maintenance of life insurance have been approved on numerous occasions by our courts." *Michel* v. *Michel*, 31 Conn. App. 338, 340, 624 A.2d 914 (1993).

The defendant relies on *Michel* to support his claim that the trial court improperly ordered life insurance. In *Michel*, the trial court ordered the plaintiff to purchase and maintain a life insurance policy of $50,000 " 'with the defendant as irrevocable beneficiary until such time as the youngest child reaches the age of eighteen.' " Id., 339. At the time of the dissolution, the plaintiff did not have life insurance. Id., 340. Neither party presented any evidence of the availability or cost of such insurance, or of the plaintiff's insurability. Id. We reversed the trial court's judgment, concluding that the trial court had entered an order with which the plaintiff might not have been able to comply. Id., 341. As a result, we remanded the case to the trial court for a new trial on all financial matters, since the trial court, without knowing the cost of the life insurance, entered orders that may have been too high or too low, depending on the cost of the insurance. Id.

Our review of the record in this case reveals that the trial court's order regarding life insurance lacks a reasonable basis in the facts. See *Lake* v. *Lake*, 49 Conn. App. 89, 92, 712 A.2d 989, cert. denied, 246 Conn. 902, 719 A.2d 1166 (1998); *Michel* v. *Michel*, supra, 31 Conn. App. 341. The defendant's financial affidavit did not

indicate that the defendant had an insurance policy on his life at the time of dissolution. The trial court also had no evidence before it indicating whether the defendant, for health reasons or otherwise, was insurable. While the court commendably attempted to ensure that funds would be available for the support of the plaintiff and the children in the event of the defendant's death; see *Michel* v. *Michel*, supra, 340; we conclude that the trial court did not have evidence before it that would create a proper foundation for such an order.

The plaintiff argues that the trial court did, in fact, have evidence of the cost and availability of life insurance to the defendant because "the court knew the defendant's life insurance was available via the Pendente Lite Stipulation Agreement. Further, the cost of the insurance was not something the trial court had to reach, as the defendant, in signing the document, represented to the court his ability to pay." Even though the record was not completely silent regarding life insurance, nothing in the record indicates that the defendant had the ability to pay for or even to obtain a $100,000 life insurance policy. Indeed, even though the pendente lite agreement provided that the defendant was to pay life insurance premiums for his family, that provision did not indicate whether the premiums were for a policy on the defendant, the plaintiff or their children.[2]

"The issues involving financial orders are entirely interwoven. The rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other."

---

[2] The only information in the record regarding life insurance premiums is in the child support and arrearage guidelines worksheet. That worksheet indicates that the parties had monthly life insurance payments of $163.14. The worksheet, however, does not reveal which party was the insured under the policy.

(Internal quotation marks omitted.) *Mulholland* v. *Mulholland*, 26 Conn. App. 585, 590, 602 A.2d 1054 (1992); *Ehrenkranz* v. *Ehrenkranz*, 2 Conn. App. 416, 424, 479 A.2d 826 (1984). Accordingly, we must remand the matter for a new trial on all financial issues. *Trella* v. *Trella*, 24 Conn. App. 219, 223, 587 A.2d 162, cert. denied, 219 Conn. 902, 593 A.2d 132 (1991).[3]

Although our holding requires a new hearing on all financial matters, we will decide three of the remaining issues as they are likely to arise in the new hearing. See *State* v. *Whitaker*, 202 Conn. 259, 268, 520 A.2d 1018 (1987).

II

The defendant next claims that the trial court improperly determined that he was liable to the plaintiff for unpaid mortgage obligations under the pendente lite order. Specifically, the defendant claims that the pendente lite order merged into the final divorce decree, thereby terminating his obligation to make the back mortgage payments. We disagree.

Additional facts are necessary to our resolution of this claim. The trial court, in its memorandum of decision, ordered the defendant to pay the plaintiff $15,000, representing "the approximate aggregate amount of mortgage payments with reference to the marital residence that the defendant, despite a court order, has neglected to pay since December, 1996 . . . ." The trial court further provided that the order was not intended as "punishment," but was intended to assist the plaintiff

---

[3] The plaintiff, in her brief, requests that we permit withdrawal of her claim for life insurance if we determine that the trial court improperly ordered the defendant to provide her with life insurance. We are not aware of any authority, however, that permits us to withdraw a claim for support conditioned on our reversal of the trial court's order of support. Accordingly, we decline to accept the plaintiff's invitation to withdraw conditionally her claim for life insurance.

in defraying the cost of moving to another residence and in assuming rental expenses because an action of foreclosure was pending on the marital residence.

The defendant claims that when the judgment of dissolution was rendered, the pendente lite order merged into the dissolution decree, thereby terminating his obligation to make the mortgage payments pursuant to the pendente lite order.

"Pendente lite orders, by their very definition, are orders that continue to be in force during the pendency of a suit, action or litigation." *Febbroriello* v. *Febbroriello*, 21 Conn. App. 200, 206, 572 A.2d 1032 (1990). "The fundamental purpose of alimony pendente lite is to provide the wife, during the pendency of the divorce action, with current support in accordance with her needs and the husband's ability to meet them." *Smith* v. *Smith*, 151 Conn. 292, 297, 197 A.2d 65 (1964). "[L]ike unpaid installments of an alimony award entered at the time of dissolution, accrued and unpaid installments of alimony pendente lite are, in effect, debts which have become vested rights of property which the court cannot take away." *Elliott* v. *Elliott*, 14 Conn. App. 541, 545, 541 A.2d 905 (1988); see *Smith* v. *Smith*, supra, 297.

We conclude that the unpaid mortgage obligations were, in effect, debt payments that could not be taken away from the plaintiff when the final dissolution decree was rendered. The parties agreed in January, 1996, that the defendant would make the mortgage payments on the marital home. The defendant, beginning in December, 1996, failed to make the mortgage payments. As a result, a foreclosure action was brought against the plaintiff. The trial court in its memorandum of decision stated that its order (1) equalled the approximate aggregate amount of the unpaid mortgage obligations and (2) assisted the plaintiff in defraying the cost of moving to another residence and paying rent. In light

of our remand for a new trial on all financial issues, we conclude that the trial court properly determined that the defendant remained liable to the plaintiff for the unpaid mortgage obligations. On remand, however, the trial court must decide whether $15,000 is the appropriate amount and, if not, what amount is proper.

The defendant relies on *Tobey* v. *Tobey*, 165 Conn. 742, 744, 345 A.2d 21 (1974), and *Saunders* v. *Saunders*, 140 Conn. 140, 146, 98 A.2d 815 (1953), to support his argument that his obligation to make the unpaid mortgage payments terminated because the obligation merged into the final dissolution decree. His reliance on *Tobey* and *Saunders* is misplaced.

In *Tobey*, the trial court issued pendente lite orders requiring the defendant to make the mortgage payments on the marital residence. *Tobey* v. *Tobey*, supra, 165 Conn. 744. The defendant subsequently defaulted and the residence was foreclosed. Id. The plaintiff, on appeal, argued that the trial court improperly failed to conclude that the defendant was in contempt of the pendente lite order. Id., 744–45. Our Supreme Court disagreed, holding that "[t]he [trial] court's order regarding the plaintiff's residence and the defendant's financial duties was interlocutory in nature and terminated with the rendition of the final judgment. . . . [I]n a divorce or separation action, a husband cannot be punished for his civil contempt arising from noncompliance with preliminary injunctions after a final judgment has been rendered unless the final judgment itself awards damages for the civil contempt." (Citations omitted; internal quotation marks omitted.) Id., 745. The court concluded that "where a final decree of divorce has been rendered, any orders regarding pendente lite alimony are merged in the final decree and thereafter, *no independent action for contempt* based on the temporary alimony order can be properly brought." (Emphasis added.) Id.

In *Saunders*, the trial court issued a pendente lite order requiring the defendant to pay $500 monthly as alimony. *Saunders* v. *Saunders*, supra, 140 Conn. 146. The defendant fully complied with the order until the final dissolution judgment was rendered. Id. The plaintiff claimed on appeal that the defendant should have been held in contempt for failing, after judgment, to honor the pendente lite order. Id. Our Supreme Court disagreed, holding that the pendente lite order was interlocutory and terminated with the final judgment. Id. The court held, therefore, that the defendant could not be adjudged in contempt. Id., 146–47.

The present case is distinguishable from both *Tobey* and *Saunders*. In both *Tobey* and *Saunders* our Supreme Court held that a trial court cannot make a *finding of contempt* for a party's failure to comply with a pendente lite order once the trial court renders a final dissolution decree because the pendente lite order merges into the dissolution decree. The reasoning behind the court's holdings in those cases is that pendente lite orders are interlocutory and, thus, become inoperative upon rendition of the final judgment. We conclude that the defendant's unpaid pendente lite alimony payments are essentially debts that do not expire upon rendition of the final judgment. Allowing the defendant's unpaid mortgage obligations to expire when the final dissolution decree is rendered would frustrate the purpose of alimony pendente lite "because [that] would encourage spouses to delay making their alimony payments until the time of dissolution, hoping that the order for alimony pendente lite would be forgiven or changed at that time." *Elliott* v. *Elliott*, supra, 14 Conn. App. 545. Indeed, "it would be error for a trial court . . . to fail to incorporate an accumulated arrearage of pendente lite alimony in a final order granting dissolution." Id., 545–46; *Tobey* v. *Tobey*, supra, 165 Conn. 745–46.

## III

The defendant next claims that the trial court improperly ordered him to pay child support despite the existence of a de facto shared custody agreement between the parties. We disagree.

At trial, the defendant argued that despite the custody and visitation plan that the parties drafted on May 6, 1997, which provided the defendant with custody and visitation for limited periods, the parties actually had created a "shared custody" plan under which the defendant should not have to pay child support. The defendant further claimed that because the children "spend an equal amount of time at the homes of both parents," the parties had a "de facto shared custody" arrangement. The trial court rejected the defendant's contentions, awarding sole custody of the children to the plaintiff and ordering the defendant to pay $350 per week in child support.

The defendant fails to provide us with authority to support his claim that where a trial court orders sole custody and orders the noncustodial parent to pay child support, a de facto joint custody arrangement is created because the children spend equal time at each of the parties' homes. Further, the parties' plan calls for the defendant to have custody only on alternating weekends, for four hours every Tuesday and four hours every other Thursday. Accordingly, we conclude that the trial court did not abuse its discretion in concluding that this plan is not a "shared parenting plan," as the defendant claims. The trial court did not abuse its discretion in ordering support.

## IV

The defendant's final claim is that the trial court abused its discretion in ordering him to pay the plaintiff's attorney's fees. Specifically, the defendant claims

that the trial court abused its discretion in ordering him to pay any of the plaintiff's attorney's fees because she had ample liquid funds to pay the obligation herself. We disagree.

"General Statutes § 46b-62[4] allows the trial court to order either parent to pay the reasonable attorney's fees of the other in any family relations matter." *Eisenbaum* v. *Eisenbaum*, 44 Conn. App. 605, 609, 691 A.2d 25 (1997). "Whether to allow counsel fees and in what amount calls for the exercise of judicial discretion. . . . In determining whether to allow counsel fees, the court must consider the statutory criteria set out in [General Statutes] §§ 46b-62 and 46b-82 and the parties' respective financial abilities. . . . An abuse of discretion in granting the counsel fees will be found only if this court determines that the trial court could not reasonably have concluded as it did." (Internal quotation marks omitted.) Id., 609–10.

"In making its determination regarding attorney's fees the court is directed by General Statutes § 46b-62 to consider the respective financial abilities of the parties. . . . Where, because of other orders, both parties are financially able to pay their own counsel fees they should be permitted to do so. . . . [T]o award counsel fees to a spouse who had sufficient liquid assets

---

[4] General Statutes § 46b-62 provides in pertinent part: "In any proceeding seeking relief under the provisions of this chapter . . . the court may order either spouse or, if such proceeding concerns the custody, care, education, visitation or support of a minor child, either parent to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. . . ."

General Statutes § 46b-82 provides in pertinent part: "In determining whether [attorney's fees] shall be awarded . . . and amount of the award, the court shall hear the witnesses, if any, of each party . . . shall consider the length of the marriage, the causes for the . . . dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . ."

would be justified, if the failure to do so would substantially undermine the other financial awards." (Citations omitted; internal quotation marks omitted.) *McGuire* v. *McGuire*, 222 Conn. 32, 44, 608 A.2d 79 (1992).

The defendant relies on *McGuire* to support his claim. In *McGuire*, the trial court, after examining the criteria outlined in §§ 46b-62 and 46b-82, ordered the defendant to pay the plaintiff $50,000 in counsel fees. Id., 43. The plaintiff, prior to the trial court's orders, had more than $500,000 in liquid assets. Id., 44. Our Supreme Court reversed the trial court's award of attorney's fees because (1) the trial court did not make a finding that the award was necessary in order to avoid undermining its other financial orders and (2) nothing in the record would support such a finding. Id., 44–45.

Our review of the record reveals that the trial court considered the statutory criteria and the parties' financial abilities in determining whether to award attorney's fees. Although the trial court did not make a specific finding that an award of attorney's fees was necessary to avoid undermining its financial orders, our review of the record reveals that the trial court reasonably could have determined that the award was necessary for that purpose. The defendant claims that the trial court's order of $15,000 in lump sum alimony is sufficient for the plaintiff to pay $7500 in attorney's fees. The trial court's order of $15,000 was intended to allow the plaintiff to pay back mortgage payments and to defray the costs of moving. Moreover, the record reveals that the plaintiff has few liquid assets. Requiring the plaintiff to pay one half of her alimony to her attorneys as fees would undermine the trial court's order of alimony. We cannot conclude, therefore, that the trial court abused its discretion or acted unreasonably in awarding the plaintiff counsel fees.

The judgment is reversed as to the financial orders only and the case is remanded for a new hearing on all financial issues in accordance with this opinion.

In this opinion HENNESSY, J., concurred.