GENNARO TEVOLINI *v.* PAMELA J. TEVOLINI
(AC 19861)

Foti, Flynn and Healey, Js.

Argued May 3—officially released October 2, 2001

*Alan Scott Pickel,* for the appellant (plaintiff).

*Rhonna W. Rogol,* with whom was *Sari B. Jaffe,* for the appellee (defendant).

HEALEY, J. The plaintiff, Gennaro Tevolini, appeals from the judgment of the trial court dissolving his marriage to the defendant, Pamela J. Tevolini. On appeal, the plaintiff claims that the court (1) abused its discretion in making its financial orders after it had precluded him from contesting the defendant's assertion as to the condition of her health, which was a material fact in the court's fashioning of its alimony order, and had created an irrebuttable presumption that the defendant was disabled, and (2) improperly denied his motion for a physical examination of the defendant where she claimed that she was disabled and thus incapable of being employed. We reverse in part the judgment of the trial court.[1]

The following facts are relevant to our disposition of the plaintiff's appeal. The plaintiff, age forty-three, and the defendant, age forty-nine, were married on June 16, 1990, in Rhode Island.[2] No children have been born to the defendant since the marriage. The plaintiff, a high school graduate, was, and still is, a hairdresser. He has a fourteen year old daughter from a prior marriage for whom he pays $100 per week in child support, and he is responsible for 50 percent of her nonreimbursed medical expenses. The defendant was a secretary who had an earning capacity at the time she married the plaintiff.[3] In 1995, she became certified as a fitness instructor and continues in that occupation on a part-time basis earning $30 for each class. At the time of the trial,the defendant was receiving social security disability benefits of $910 per month.

---

[1] Our judgment does not affect that portion of the trial court's judgment dissolving the marriage of the parties.

[2] The marriage was the defendant's third marriage and the plaintiff's second marriage.

[3] Additional circumstances will be referred to as necessary.

The plaintiff attributed the failure of the marriage to the stresses of the marriage; the defendant believed that her illness and resulting disability caused the breakdown. The court rendered judgment of dissolution on the ground of irretrievable breakdown.

In addition, certain other circumstances should be set forth, particularly those going to the matter of the defendant's health, the plaintiff's attempt to inquire into that area, and the court's response and rulings on that phase of the trial, which specifically involved the issue of alimony. This action was commenced in October, 1997. At that time, the defendant already had been found to be disabled by United States Social Security Administration. When she was determined to be disabled by the Social Security Administration on September 15, 1997, she was notified[4] that she would become entitled to "monthly disability benefits"[5] beginning in March, 1998, amounting to $910. At the time of the trial, she was receiving $910 monthly in social security benefits.

On February 26, 1999, the defendant filed with the court proposed orders seeking in alimony the sum of $650 per week "to be paid until the death of either party or the remarriage of the defendant or the defendant regaining her health so that she is able to be employed."

[4] The defendant also was informed that she had to be disabled for five full calendar months "in a row" before she could be entitled to benefits. Thus, her first month of entitlement to benefits would be March, 1998. Further, she was informed that she would receive $9011 around January 18, 1999, which was money due her for the period from March, 1998, through December, 1998.

[5] "[M]onthly disability benefits" is about as specific as the claimed evidence gets as to the type of disability that the defendant is receiving. It is true that during the trial, the defendant's counsel made the statement to the court that the defendant had "applied for last summer and has now qualified for social security disability as a fully disabled person." That, of course, is not evidence. "It is well settled that representations of counsel are not, legally speaking, 'evidence.' " *Cologne* v. *Westfarms Associates*, 197 Conn. 141, 154, 496 A.2d 476 (1985); see *Constantine* v. *Schneider*, 49 Conn. App. 378, 395, 715 A.2d 772 (1998).

In her proposed orders, the defendant claimed that she "presently has [the Epstein-Barr virus], which attacks the immune system and . . . has been diagnosed by Susan M. Levine, M.D., with chronic fatigue syndrome." In response, the plaintiff filed a motion for a physical examination of the defendant, requesting that she "be compelled to attend a physical examination by a physician of the plaintiff's choosing" because of her claims that she suffers from chronic fatigue syndrome, an illness that she did not suffer from prior to the parties' separation.

Prior to trial, the plaintiff pressed his motion for a physical examination of the defendant and argued that it should be granted by the court. The court heard the plaintiff's motion at trial and denied it upon learning from the defendant that she had qualified for social security disability benefits. During the colloquy regarding the motion, the court questioned the plaintiff about the purpose of the requested examination when the defendant already had qualified for social security benefits. The plaintiff responded that his intent was "to refute that conclusion" that the defendant was disabled and, in particular, because he had not been a party to her examination for social security benefits eligibility. The court replied, "Well, I don't review what [the Social Security Administration] does. My policy has always been [that] if somebody qualifies for social security, as far as I'm concerned they're not in the labor market." The plaintiff argued that he was not trying to make a point as to whether the defendant was in the labor market at that time; he claimed, rather, that "the whole issue has to do with the duration of alimony under [General Statutes § 46b-82]." The court then denied the motion.

During the trial itself, the court articulated its denial of the plaintiff's motion for a physical examination. The court stated, "I'll tell you what. I can tell you what I

said. If you qualify for social security disability, you are not able to work, and that's my position. I don't review what [the Social Security Administration] has ruled on. As far as I'm concerned, she may have minimal working ability, but that's as far as it goes because she's still collecting social security. They can have her reviewed if they think she should go back to work as of today, if she got a check for last month, and she hadn't received any notice that she's been withdrawn from social security then, as far as I am concerned, she's disabled and that's the end of that. You don't have to belabor it."

The defendant also testified at trial that she believed that her illness caused the dissolution of the parties' marriage. When the plaintiff objected to the testimony on the ground that there had not been any evidence presented regarding the defendant's illness, the court responded, "We don't have to. We know that she is on social security disability. She didn't get there out of the grace of God. All right."

After rendering its judgment dissolving the marriage on the ground of irretrievable breakdown, the court entered certain other orders. It ordered that the defendant retain real estate in Stamford, where the parties had resided. It ordered that the plaintiff pay to the defendant, as periodic alimony, the sum of $400 weekly "until the death of either party, the remarriage of the defendant or future court order." Having taken judicial notice of the court file in a separate action that was filed by the defendant to recoup an investment, the court ordered that because the plaintiff and the defendant each had contributed $80,000 to that investment, each party was to be the sole owner "of all rights arising out of $80,000 of the investment with the [defendants in that action]." Further, it ordered that the escrowed tax refunds be divided equally (after paying the tax preparer) and that certain items of personalty be returned to the plaintiff. The remaining assets on the

parties' financial affidavits were to be retained by each party, and each party was to be solely responsible for the liabilities listed on the respective affidavits. This appeal followed.

I

"The standard of review in family matters is that this court will not disturb the trial court's orders unless it has abused its legal discretion or its findings have no reasonable basis in fact. . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented." (Internal quotation marks omitted.) *Werblood* v. *Birnbach*, 41 Conn. App. 728, 730, 678 A.2d 1 (1996). In reviewing "a trial court's exercise of its broad discretion in domestic relations cases, [we are] limited to the questions of whether the [trial] court correctly applied the law and could reasonably have concluded as it did . . . Moreover, we do not retry the facts. . . . In determining whether the trial court could reasonably conclude as it did *on the evidence before it*, every reasonable presumption should be given in favor of the correctness of its action." (Emphasis added; internal quotation marks omitted.) *Lowe* v. *Lowe*, 47 Conn. App. 354, 361, 704 A.2d 236 (1997); see *Bender* v. *Bender*, 60 Conn. App. 252, 256, 758 A.2d 890, cert. granted on other grounds, 255 Conn. 914, 763 A.2d 1037 (2000).

We turn first to the plaintiff's claim that the court abused its discretion in making its financial orders because it precluded him from contesting the defendant's assertion as to the condition of her health, which the plaintiff claims was a material factor in the court's fashioning of the alimony order. The plaintiff further contends that the court, in effect, concluded that the defendant was disabled without any evidence to support such a determination and improperly created an

irrebuttable presumption that she was disabled on the basis of her receipt of social security benefits.[6]

Our alimony statute is set forth in § 46b-82.[7] In determining whether to award alimony, that statute

---

[6] The plaintiff further argues that the court concluded that he was collaterally estopped from contesting the defendant's health. We do not agree with the plaintiff's assertion because we do not regard such a doctrine to be applicable here.

Our Supreme Court has stated that "[c]ollateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the *same* parties in any future lawsuit. *Ashe* v. *Swenson*, 397 U.S. 436, 443, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970)." (Emphasis added.) *Walsh* v. *Stonington Water Pollution Authority*, 250 Conn. 443, 460–61, 736 A.2d 811 (1999). We are aware that our Supreme Court has "held that the doctrine [of collateral estoppel] may also apply to determinations of administrative agencies under certain circumstances." *State* v. *Fritz*, 204 Conn. 156, 172, 527 A.2d 1157 (1987).

For collateral estoppel to apply, however, privity must exist, in this case, between the plaintiff and the Social Security Administration. "Privity is not established . . . from the mere fact that persons may happen to be interested in the same question or in proving or disproving the same facts. 46 Am. Jur. 2d, Judgments § 532. While the concept of privity is difficult to define precisely, it has been held that a key consideration for its existence is the sharing of the same legal right by the parties allegedly in privity." (Internal quotation marks omitted.) *State* v. *Fritz*, supra, 204 Conn. 173. It is apparent that the plaintiff and the Social Security Administration are not in privity in this case. Accordingly, the doctrine of collateral estoppel is not invoked here.

[7] General Statutes § 46b-82, entitled "Alimony," provides: "At the time of entering the decree, the Superior Court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable, including an order to either party to contract with a third party for periodic payments or payments contingent on a life to the other party. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

requires the court to consider a number of factors, including the health of the parties. "A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria." (Internal quotation marks omitted.) *O'Neill* v. *O'Neill,* 13 Conn. App. 300, 306, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988); see *Watson* v. *Watson,* 20 Conn. App. 551, 555, 568 A.2d 1044 (1990). Our Supreme Court has stated that "health is a material factor in awarding alimony." *McGuinness* v. *McGuinness,* 185 Conn. 7, 10–11, 440 A.2d 804 (1981); see *Gallo* v. *Gallo,* 184 Conn. 36, 49, 440 A.2d 782 (1981).[8] "A party's health is one of the factors which draws its significance, in part, from the impact it necessarily has upon other statutory [§ 46b-82] factors. For example, a party's health problem may also have an impact upon such things as vocational skills, employability, income and/or needs." A. Rutkin, K. Hogan & S. Oldham, Family Law and Practice (2d Ed. 2000) § 33.8, p. 46. "General Statutes § 46b-82 and the factors contained therein govern whether the court will award alimony in a dissolution action. The court is to consider these factors in making an award of alimony, but it need not give each factor equal weight. . . . As long as the trial court considers all of these statutory criteria, it may exercise broad discretion in awarding alimony." (Citation omitted; internal quotation marks omitted.) *Costa* v. *Costa,* 57 Conn. App. 165, 173–74, 752 A.2d 1106 (2000).

Under § 46b-82, "[i]n determining whether alimony shall be awarded, and the duration and amount of the award, the court *shall hear the witnesses, if any, of each party* . . . ." (Emphasis added.) Section 46b-82, therefore, provides for a hearing regarding alimony mat-

---

[8] In *Gallo,* on the issue of the statutory criteria for alimony and the award of property, our Supreme Court stated that "[i]t would be error to exclude testimony on any of the statutory factors." *Gallo* v. *Gallo,* supra, 184 Conn. 49.

ters. Our Supreme Court has stated that "[a] hearing can be a proceeding in the nature of a trial with the presentation of evidence, it can be merely for the purpose of presenting arguments, or, of course, it can be a combination of the two. . . . Not only does a hearing normally connote an adversarial setting, but usually it can be said that it is any *oral* proceeding before a tribunal. . . . Our cases consistently recognize the generally adversarial nature of a proceeding considered a hearing, in which witnesses are heard and testimony is taken." (Citations omitted; internal quotation marks omitted.) *Rybinski* v. *State Employees' Retirement Commission*, 173 Conn. 462, 469–70, 378 A.2d 547 (1977). "A hearing necessarily involves an opportunity by a party to present his arguments." *Colonial Trust Co.* v. *Austin*, 133 Conn. 696, 699, 54 A.2d 503 (1947).

We conclude that because the defendant placed her health at issue in her claim for alimony, the plaintiff then had a right under § 46b-82 to be heard and to offer evidence to refute that claim. That right to be heard, to be meaningful, included, inter alia, the right not only to argument, but also to present evidence at the trial regarding that issue. Even though an action for divorce or dissolution of marriage is a creature of statute, it must be remembered that divorce "is essentially equitable in its nature." *Pasquariello* v. *Pasquariello*, 168 Conn. 579, 584, 362 A.2d 835 (1975).

Before we determine whether the court abused its discretion in precluding the plaintiff from contesting the defendant's assertion as to her health, we first consider his claim that the court improperly concluded that the defendant was disabled when, as the plaintiff claims, the defendant offered no evidence of her alleged illness other than her receipt of social security disability benefits and her testimony that her illness caused the end of the marriage. Insofar as the record before us is con-

cerned, the only evidence that the court permitted as to the defendant's health was the defendant's statement that she believed that her illness was the cause of the dissolution of the marriage. When the plaintiff objected to that statement because "we haven't heard any testimony concerning her illness," the court stated that "[w]e don't have to. We know that she is on social security disability. She didn't get there out of the grace of God. All right."

That colloquy occurred after the court denied the plaintiff's motion for a physical examination of the defendant, as previously indicated. It is significant to note that in denying that motion, the court, having been informed that the defendant was receiving social security disability payments, stated, inter alia, that "[i]f you qualify for social security disability, you are not able to work, and that's my position . . . [even though] she may have minimal working ability . . . ." It appears that since March, 1998, the plaintiff has been receiving $911 per month in social security disability payments.[9] Whether that amount was for "total disability," as the defendant claims, is not disclosed by *evidence.*

There was no evidence that the defendant was "totally disabled" for social security purposes, as she claimed in the trial court and before us on appeal. To be sure, her counsel posited to the trial court that the defendant had "applied for last summer and has now qualified for social security disability as *a fully disabled person.*" (Emphasis added.) That statement by the defendant's counsel does not constitute evidence

---

[9] There is in the record before us no evidence of the actual award by the Social Security Administration. There is, however, in the defendant's appendix to her brief a copy of the "Notice of Award" of such ($911) monthly payments to her. The "Notice of Award," however, admittedly was not presented to the trial court. Moreover, there was no evidence before that court that the actual award was for "total disability," which is the degree of disability claimed by the defendant.

because "[i]t is well settled that representations of counsel are not, legally speaking, 'evidence.'" *Cologne* v. *Westfarms Associates*, 197 Conn. 141, 154, 496 A.2d 476 (1985), citing *Curtis* v. *Rives*, 123 F.2d 936, 941 (D.C. Cir. 1941); *Dunn* v. *Stewart*, 235 F. Sup. 955, 964 (S.D. Miss. 1964); *Celentano* v. *Zoning Board of Appeals*, [135 Conn. 16, 18, 60 A.2d 510 (1948)]; *American National Bank & Trust Co. of Mobile* v. *Long*, 281 Ala. 654, 656, 207 So. 2d 129 (1968); *Sloan* v. *Sloan*, 393 So. 2d 642, 644 (Fla. App. 1981); *Davis* v. *Independence*, 404 S.W.2d 718, 720 (Mo. 1966); *Wilson* v. *Motors Ins. Corp.*, 349 S.W.2d 250, 254 (Mo. App. 1961) (statements of unsworn attorney do "not prove themselves or constitute evidence"); *O'Hearn* v. *O'Hearn*, 55 App. Div. 2d 766, 767, 389 N.Y.S.2d 651 (1976); see also *State* v. *Duntz*, 223 Conn. 207, 236, 613 A.2d 224 (1992) ("[s]tatements or comments made by attorneys in the course of examination or argument are not facts in evidence, and may not properly be considered by the [finder of fact]"); *Constantine* v. *Schneider*, 49 Conn. App. 378, 397, 715 A.2d 772 (1998) (" '[r]epresentations by counsel are not 'evidence' upon which an appellate court can rely when reviewing the findings of the trial court' "); *State* v. *Carsetti*, 12 Conn. App. 375, 379, 530 A.2d 1095 (same), cert. denied, 205 Conn. 809, 532 A.2d 77 (1987).

In addition, we already have noted the absence in the record of any documentary evidence of the defendant being "totally or fully" disabled. That leaves us, so as far as her health is concerned, only with her own testimony that her "illness" was the cause of the end of her marriage and her statement on her financial affidavit that she receives $910 monthly in social security benefits. In like fashion, there is no *evidence* in the record that she suffers from and is disabled by the maladies of the Epstein-Barr virus and chronic fatigue syndrome. The record discloses only representations by the defendant's counsel that the defendant was suffering from

those maladies.[10] That cannot be considered legally valid evidence. Once the defendant put her health in issue, it was incumbent on her to offer pertinent evidence to support her position. See *Powers* v. *Powers*, 186 Conn. 8, 11, 438 A.2d 846 (1982). That she did not do. Moreover, the court's ruling, which was based on the lack of evidence before it, that the Social Security Administration's "determination" to award her monthly disability payments effectively terminated the plaintiff's right to examine the defendant as to her disability, was improper, given the significance of "health" as a material factor under § 46b-82.

The defendant argues, on the basis of the doctrine of judicial notice, that state courts may take judicial notice of federal statutes. Citing certain sections of the Social Security Act of 1935, 42 U.S.C. § 301 et seq., as amended, the defendant asserts in her brief that there was sufficient evidence before the court such that "it certainly was neither irrational nor illogical for the court to *infer* from [the] defendant's having been found to be disabled for the purposes of the [Social Security Act] that more probably than not she *was* disabled and its ruling must therefore be upheld." (Emphasis added.) That inference, however, assumes that the defendant has proven that she was "disabled," as she claimed.

The plaintiff maintains that the court improperly substituted the conclusions of the Social Security Adminis-

---

[10] The defendant's counsel represents that the plaintiff was informed of and given a copy, at a pretrial conference, of the written opinion of Levine, the physician who was said to be "treating" the defendant, and that the defendant had been diagnosed as having chronic fatigue syndrome. There is no indication that Levine ever testified at the trial or that her opinion ever was made an exhibit at the trial. It is not only true that representations of counsel "are not 'evidence' upon which an appellate court can rely when reviewing the findings of the [finder of fact]," but neither "can a [document] that was not made under oath and never admitted as an exhibit constitute evidence upon which [the reviewing court] may evaluate the ruling of the trial court." *State* v. *Carsetti*, supra, 12 Conn. App. 379.

tration for what should be its own independent fact-finding determination. Although he does not challenge the right of the fact finder to draw inferences, the plaintiff claims that what the court did was more than draw an "improper" inference; rather, he claims, the court, in legal effect, created an irrebuttable presumption that the defendant was disabled. We agree with the plaintiff; that was the practical effect of the court's ruling.

The question then arises whether, on the record before us, the court's announced policy that "[i]f you qualify for social security disability, you are not able to work, and that's my position," and that "[the trial court does not] review what [the Social Security Administration] has ruled on," in denying the plaintiff's motion for a physical examination and the court's later prohibition at the trial of any evidence of the defendant's health, constitutes an abuse of discretion. We conclude that in this case, it does constitute an abuse of discretion.

An irrebuttable presumption, also known as a conclusive presumption,[11] is, according to Black's Law Dictionary, "[a] presumption that cannot be overcome by any additional evidence or argument." Black's Law Dictionary (7th Ed. 1999). "A presumption of law[12] must be based upon facts of universal experience and be controlled by inexorable logic." (Internal quotation marks omitted.) *Ducharme* v. *Putnam*, 161 Conn. 135, 140, 285 A.2d 318 (1971), citing *Valentine* v. *Pollak*, 95 Conn. 556, 561, 111 A. 869 (1920). Irrebuttable presumptions are impermissible under the due process clauses of the fifth and fourteenth amendments to the United States constitution when "not necessarily or universally true

---

[11] In civil cases, conclusive presumptions also are called legal or irrebuttable presumptions. C. Tait, Connecticut Evidence (3d Ed. 2001) § 3.16.1.

[12] Black's Law Dictionary defines a "presumption of law" to mean "[a] legal assumption that a court is required to make if certain facts are established and no contradictory evidence is produced." Black's Law Dictionary, supra.

in fact, and when the State has reasonable alternative means of making the crucial determination." *Vlandis* v. *Kline*, 412 U.S. 441, 452, 93 S. Ct. 2230, 37 L. Ed. 2d 63 (1973); see *Cleveland Board of Education* v. *LaFleur*, 414 U.S. 632, 644–45, 94 S. Ct. 791, 39 L. Ed. 2d 52 (1974). "Rather, standards of due process require that the State allow . . . the opportunity to present evidence [rebutting the presumption]." *Vlandis* v. *Kline*, supra, 452. "[The United States Supreme Court] has held more than once that a statute creating a presumption which operates to deny a fair opportunity to rebut it violates the due process clause . . . ." *Heiner* v. *Donnan*, 285 U.S. 312, 329, 52 S. Ct. 358, 76 L. Ed. 772 (1932); *Salemma* v. *White*, 175 Conn. 35, 40, 392 A.2d 969 (1978).

It is important to our analysis to understand first that neither party claims that the court relied on any statutory authority provided for in the Social Security Act that creates *any* presumption that receipt of disability benefits by *this* defendant in a dissolution case irrebuttably forecloses any inquiry by a plaintiff into the health of that defendant. Second, it *is* the plaintiff's claim that nonetheless, the practical effect of the court's ruling was to render his efforts to explore the health issue at trial fruitless, *as if* the disability payments did, in some fashion, justify the court's announced "policy."[13]

Furthermore, we do not believe that the "inference"[14] claimed by the defendant is one that logically and reasonably can be drawn in this dissolution case in which health is material and the plaintiff has, by the court,

---

[13] We keep in mind that there is no evidence in this case of the degree of the defendant's disability. Not only was the actual award not in evidence, but there is no evidence that she in fact is disabled by the maladies that she claims to have. Although she may be disabled, those claimed maladies still have to be demonstrated appropriately by evidence.

[14] The court, however, did not cast its ruling in terms of probability, as the defendant suggests, but rather as one of unqualified determination.

effectively been precluded from probing that issue. An "inference" means "[a] conclusion reached by considering other facts and deducing a logical consequence from them." Black's Law Dictionary, supra. To be properly proven, the inference not only must be logical and reasonable, but strong enough so that it can be found that it is more probable than not that the fact to be inferred is true. *Hennessey* v. *Hennessey*, 145 Conn. 211, 214–15, 140 A.2d 473 (1958). Once again, on the basis of the evidence actually before the court, we cannot say that it would be reasonable to draw such an inference. We recognize, though, that the law makes no distinction between direct and circumstantial evidence. See *State* v. *Gunning*, 183 Conn. 299, 312, 439 A.2d 339 (1981). We conclude that the court could not properly infer that the defendant's qualification for and receipt of social security disability payments foreclosed discussion as to the issue of her health relative to the alimony order.

The defendant argues that the court's actions, even if they were erroneous, constituted harmless error and would not warrant the reversal of the financial orders. She also argues in her brief that the record shows "that the result would be unchanged even if the trial court had not disallowed an independent medical examination *or* drawn an inference from [the] defendant's disability determination." (Emphasis added.) We do not agree.

"The [plaintiff] is entitled to relief from the trial court's improper rulings only if one or more of those rulings were harmful. *DiBerardino* v. *DiBerardino*, 213 Conn. 373, 385, 568 A.2d 431 (1990); *Manning* v. *Michael*, 188 Conn. 607, 611, 452 A.2d 1157 (1982); *McCahill* v. *Town & Country Associates, Ltd.*, 185 Conn. 37, 40, 440 A.2d 801 (1981). It is well settled that the burden of establishing harm rests on the appellant. *Swenson* v. *Sawoska*, 215 Conn. 148, 153, 575 A.2d 206 (1990); *Hensley* v. *Commissioner of Transportation*, 211 Conn. 173, 184, 558 A.2d 971 (1989); *Brookfield* v.

*Candlewood Shores Estates, Inc.*, 201 Conn. 1, 7, 513 A.2d 1218 (1986). To meet this burden in a civil case, the appellant must show that the ruling would likely affect the result." (Internal quotation marks omitted.) *Borkowski* v. *Borkowski*, 228 Conn. 729, 747, 638 A.2d 1060 (1994); see *Bell* v. *Biharey*, 168 Conn. 269, 273, 362 A.2d 963 (1975).

It follows, from what we previously have set forth, that the plaintiff has demonstrated that the court's actions clearly were harmful and affected[15] the result reached on the alimony issue in this case. The health of a party is a material criterion under § 46b-82, and our Supreme Court has stated that the trial court must consider *all* of the criteria in that statute. *Caffe* v. *Caffe*, 240 Conn. 79, 82, 689 A.2d 468 (1997). Moreover, in its memorandum of decision, the court stated that it took into account all of the relevant factors in determining the alimony award pursuant to § 46b-82. The court's rulings clearly were harmful and warrant the reversal of the financial orders. In a word, they constitute an abuse of discretion. Accordingly, we remand the matter for a new trial on all of the financial issues, not limited to alimony.

## II

The plaintiff next contends that the court abused its discretion by denying his motion for a physical examination of the defendant. Although we disagree with the reasoning of the court in denying the motion, we nonetheless uphold the denial of the motion itself.

Pursuant to Practice Book § 13-11 (a), "[i]n any civil action, in any probate appeal, or in any administrative

---

[15] We are not persuaded by the defendant's argument that the court's "errors" cannot be harmful because they can be remedied should the condition of her health change and that should that consequently bring about a change in her social security, then the plaintiff would have the right to seek a modification on the showing of a substantial change in circumstances. Such gossamer possibilities are not persuasive.

appeal where the judicial authority finds it reasonably probable that evidence outside the record will be required, in which the mental or physical condition of a party . . . is material to the prosecution or defense of said action, the judicial authority may order the party to submit to a physical or mental examination by a physician . . . ." Practice Book § 13-11 (c) provides in relevant part that "such order may be made only on motion for good cause shown . . . ."

We review the court's denial of a motion for a physical examination under an abuse of discretion standard. See *In re Daniel C.*, 63 Conn. App. 339, 365, 776 A.2d 487 (2001) (standard of review for denial of motion for psychological examination in termination of parental rights case is one of abuse of discretion); *State* v. *Nguyen*, 52 Conn. App. 85, 94, 726 A.2d 119 (1999) (standard of review of denial of motion for physical examination of sexual assault victim is one of abuse of discretion), aff'd, 253 Conn. 639, 756 A.2d 833 (2000). "In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) *State* v. *Nguyen*, supra, 94; see *Knock* v. *Knock*, 224 Conn. 776, 782, 621 A.2d 267 (1993).

This court can sustain a decision on a theory different from that adopted by the trial court. See *Groton* v. *Commission on Human Rights & Opportunities*, 169 Conn. 89, 101, 362 A.2d 1359 (1975). In this case, the court denied the plaintiff's motion for a physical examination of the defendant on the ground that her receipt of social security disability benefits had rendered such an examination unnecessary. Although we disagree with the court's rationale, as previously set forth, we nonetheless uphold the denial of the motion because

the plaintiff failed to demonstrate good cause for a physical examination.

Practice Book § 13-11 does not provide the definition of the phrase "for good cause shown." Black's Law Dictionary (6th Ed. 1991), however, defines "good cause" as a "[l]egally sufficient ground or reason." In this case, the plaintiff did not establish good cause to support his motion for a physical examination.

The plaintiff had notice of the defendant's claimed ailments prior to receiving her proposed financial orders in 1999. Moreover, the plaintiff had available to him various discovery means that would have enabled him to obtain information about the defendant's health short of an actual physical examination. In her financial affidavits of 1997 and 1998, the defendant stated that the status of her health prevented her from securing gainful employment. The defendant further provided letters of authorization, permitting the plaintiff to speak with her treating physicians, and she also gave him a medical report from one of her treating physicians, Levine, in 1998. The plaintiff had even filed a motion to take Levine's deposition. The plaintiff, however, did not pursue any conversations with the defendant's treating physicians, nor did he depose Levine.

We further note that in the context of the dissolution of a marriage, the court possesses wide discretion to act in accordance with principles of equity. *Pasquariello* v. *Pasquariello*, supra, 168 Conn. 583; see *Meehan* v. *Meehan*, 40 Conn. App. 107, 112–13, 669 A.2d 616, cert. denied, 236 Conn. 915, 673 A.2d 1142 (1996). "Equity is a two-way street and must be recognized as such wherever the court employs equity to resolve a dispute." (Internal quotation marks omitted.) *Hackett* v. *Hackett*, 42 Conn. Sup. 36, 53, 598 A.2d 1112 (1990), aff'd, 26 Conn. App. 149, 598 A.2d 1103 (1991), cert. denied, 221 Conn. 905, 600 A.2d 1359 (1992). In this case, where

alternative means existed to obtain information regarding the health status of the defendant, the plaintiff not only lacked good cause to support his motion for a physical examination, but principles of equity mandated the denial of the motion. Accordingly, we uphold the denial of the plaintiff's motion for a physical examination of the defendant.

## III

We now turn to the matter raised by the defendant, which is that if a new trial is ordered, as we are ordering in this appeal, we should review the court's failure to award her medical benefits, life insurance and counsel fees, as well as its alleged disparate treatment of the parties as to the gifts each received from their respective families. We note that the defendant had filed a motion requesting the court to articulate[16] its memorandum of decision. The court responded to that motion.

On the basis of our holding that the court abused its discretion in making its financial orders, we conclude that it is unnecessary to address the defendant's claim, as we are remanding this matter for a new hearing on all financial issues. To conclude otherwise would defeat the goal of an equitable distribution of the parties'

---

[16] After the court filed its memorandum of decision, the defendant filed her motion for articulation. That motion requested that the court rule on the "following overlooked matters," and referred to her requests for counsel fees and the plaintiff's contribution to her medical insurance premiums. It also asked the court to state "whether or not it took into consideration gifts received by the plaintiff from his father in determining the plaintiff's income to arrive at an alimony order."

In its articulation, the court disputed the suggestion that it had "overlooked" anything, and pointed out that no order was entered as to counsel fees and medical insurance premiums. As to the request concerning the matter of family gifts to the plaintiff, the court articulated that its memorandum of decision stated that it had "reviewed the testimony [and] evaluated the witness and documents in evidence . . . ." In its memorandum of decision, the court stated that this was "all in light of General Statutes §§ 46b-81, 46b-82 and other relevant law" in arriving at its decision.

assets. In this case, the financial issues are inextricably interwoven. "The rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) *Papa* v. *Papa*, 55 Conn. App. 47, 51, 737 A.2d 953 (1999).

The judgment is reversed as to the financial orders only and the case is remanded for a new hearing on all financial issues.

In this opinion the other judges concurred.