[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The marriage of the parties was dissolved on July 12, 1999, after a contested trial. The plaintiff (Husband) successfully appealed the decision, and the Appellate Court remanded the case for a retrial on the financial issues only. Tevolini v. Tevolini, 66 Conn. App. 16 (2001).
The trial on remand was held over a period of three days, December 17 through December 19, 2002. All evidence was presented as the facts existed on April 9, 1999, the date of the first trial. Sunbury v. Sunbury, 216 Conn. 673 (1990).
The parties intermarried on June 16, 1990. It was the defendant's (Wife) third marriage and the Husband's second marriage. No children were born to the Wife. The Husband had a daughter from his prior marriage.
At the time of trial in April, 1999 the Husband was 44 years old and the Wife was 49 years old. The Husband's daughter was 14 years old. Both parties were high school graduates. The Husband was a hairdresser. The Wife was a secretary at the time of marriage. In 1995, she became certified as a fitness instructor and worked in that capacity. At the time of trial, the Wife was receiving social security disability benefits of $910 per month.
The original trial court did not assess fault to either party as to the failure of the marriage. The court rendered judgment of dissolution on the ground of irretrievable breakdown.
The main issue in this case involves the state of the Wife's health. At the time this action was commenced in October, 1997, the Wife had been found to be disabled by the United States Social Security Administration. She began receiving monthly disability benefits in March, 1998 and was receiving the benefits at the time of trial.
The Wife's claim is that in April, 1999, she was fully disabled and CT Page 69 unable to work. Therefore, she has requested a periodic alimony award until her health is restored. The Husband disputes this assertion. The Husband had been precluded from contesting the issue of the Wife's health at the first trial, and that was the reason for the remand. At the current trial considerable evidence was presented on that subject.
The Wife testified as to her medical history and her condition as of Apil, 1999. She stated that she was not feeling well in 1996 and was required to curtail her work schedule. Since then, she claimed that her medical condition worsened, resulting in her having problems functioning at any level. In 1999, she became exhausted and sick all the time.
The Wife entered into evidence as to her medical condition the following:
 (1) Report of her treating physician, Doctor Alan Falkoff, an internist who started treating the Wife in 1994;
 (2) Report of Dr. Susan Levine, board certified in internal medicine and infectious diseases, who treated the Wife starting in June, 1998;
 (3) Report of Doctor Stanley Augenstein, a psychologist who performed a psychological evaluation of the Wife in 1998 at the request of a branch office of the Social Security Administration.
 (4) Deposition of Doctor Stanley Augenstein.
Dr. Falkoffs report provided a detailed record of the history of the medical problems the Wife presented over the years and of his diagnoses and treatments of the conditions.
Dr. Susan Levine's report indicates a diagnosis of chronic fatigue syndrome. As of June, 1998, the doctor stated the prognosis as to the Wife's condition to be poor and concluded that the Wife was totally and permanently disabled.
Doctor Augenstein's evaluation reported no organic disease was found and that there were inconsistent results in the psychological tests performed. He concluded that the Wife was not able to work.
The Husband presented as an expert witness Doctor Arthur Taub, a neurologist. The doctor's credentials included a master's degree in biology, a M.D. degree and a Ph.D. degree in neuroscience. He based his opinions upon his review of the medical reports, office and laboratory notes of the treating physicians, and deposition offered by the Wife. CT Page 70
Doctor Taub, with detailed explanations, analyzed each medical report and rendered his opinions as to the results indicated. The doctor's testimony was clear, well reasoned and credible.
The Wife offered no evidence in rebuttal to Doctor Taub's testimony.
The court finds that the Wife has failed to establish her assertions that she was totally disabled or permanently disabled and unable to work as of April, 1999. She presented no credible evidence by her own testimony or through the medical reports presented to persuade the court that she was unemployable at that time.
The Wife presented no evidence as to the type of disability benefits she receives from the Social Security Administration. However, an examination of the Social Security Act of 1935, United States Code, Section 416(i) indicates the definition of disability for Social Security purposes means "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." Therefore, the benefits the Wife is receiving are based on the conclusions of the Social Security Administration that the Wife is unable to engage in any employment activities for some indefinite period of time.
Absent any Federal statutory prohibition, this court is not bound by the conclusions reached by an administrative agency of the Federal Government. The court has the right and responsibility to make its own independent fact finding determination on the issues of the health and employability of the parties.
Each party briefly testified as to the causes for the dissolution. The court finds each must bear some responsibility for the failure of the marriage and does not assess fault to either party.
The court has carefully reviewed the testimony, evaluated the witnesses and documents in evidence and considered the criteria set forth in Connecticut General Statutes, Sections 46b-62, 46b-81 and 46b-82 in reaching the decisions reflected in the orders hereinafter stated.
The following orders may enter:
 (1) The Husband shall pay the Wife, as periodic alimony, the sum of $400 per week. The payments shall be effective as of Monday, July 12, 1999 and continue on Monday of each week thereafter, in advance, until the death of either party, the Wife's remarriage, the Wife's cohabitation CT Page 71 as defined in General Statutes Section 46b-86 (b) or December 31, 2005, whichever event first occurs. This order shall be nonmodifiable as to duration.
An immediate wage withholding order may enter.
This order is based on the Husband's annual gross income of $94,000 (wages of $74,000 and tips of $20,000) resulting in a net income of approximately $70,000 per year.
This was a marriage of nine years, with the parties separating after seven years. The Wife worked during the marriage as a secretary-receptionist and earned in the range of $20,000 — $25,000 per year. She also became certified as a fitness instructor and earned between $20-$40 per class.
The term of alimony ordered should be sufficient for the Wife to rehabilitate herself by honing her skills and seeking retraining if necessary and finding employment either as a secretary or a fitness trainer.
 (2) The Husband currently owns a life insurance policy with a face value of $50,000. Unless his daughter is the beneficiary pursuant to a court order to secure the Husband's child support obligation, the Husband shall immediately name the Wife the beneficiary thereof as long as the Husband is obligated to pay alimony to the Wife.
If the Husband's daughter is the current beneficiary pursuant to a court order, when the Husband's obligation to pay child support terminates he shall immediately change beneficiaries and name the Wife as beneficiary for the period indicated above.
The Husband shall annually provide the Wife with proof of coverage.
 (3) The Wife's co-op at 25 Second Street, Stamford shall remain the sole property of the Wife.
 (4) The parties shall each be entitled to 50% of the investment made with Ira and Ruth Miner. ($80,000 each).
 (5) The tax refunds (escrowed) shall be divided equally after the payment of the tax preparer's fees, if any.
 (6) Each party shall retain the remaining assets as listed on the respective financial affidavits. CT Page 72
 (7) Each party shall be solely responsible for the liabilities listed on the respective affidavits.
 (8) The Wife has requested an award of counsel fees. The fees requested after the first trial were $15,000. The current request is for $47,000 which includes additional fees and expenses of approximately $29,000, attributed to the retrial.
The Husband opposes the award of any counsel fees but does not contest the reasonableness of the $15,000 claim requested as to the first trial.
The court has considered the criteria of Section 46b-62 in reference to the claim for fees. The court has concluded that the request should be granted in part as the court finds that a total denial of the Wife's claim would unduly impair and undermine the other financial awards entered.
The court awards the Wife the sum of $15,000 as a contribution towards attorney's fees. The court finds this to be an appropriate award in response to a request for either $15,000 or $47,000, even if the Husband withdraws his objection to the reasonableness of the larger amount requested by the Wife.
The Husband shall pay this award at the rate of $100 per week. Payments shall commence the first Monday in February, 2003 and weekly thereafter until paid in full.
Judgment may enter accordingly.
 ___________________ NOVACK, J.T.R.
CT Page 73